Howell, Appellant, *v.* Sewickley Township.

Argued April 10, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused August 6, 1945.

*Carroll Caruthers,* with him *Thomas G. Taylor,* for appellant.

*James Gregg,* with him *Max' M. Bergad, John W. Pollins, Jr.,* and *Edward Greb Bauer,* for appellees.

OPINION BY MR. JUSTICE JONES, June 29, 1945:

The plaintiff brought this suit in equity, seeking to obtain certain relief, in particular, a mandatory injunction requiring the defendant township to remove some buildings and other structures from lands belonging to the plaintiff whereof the defendant township claims to be the lessee. The remaining defendants are the township's supervisors. After hearing, the learned chancellor filed an adjudication embracing relevant findings and conclusions. Upon disposition of exceptions of the plaintiff thereto, the learned court below entered a decree certifying the controversy to the law side of the court. From that decree, the plaintiff took the present appeal.

The legal questions involved are neither novel nor intricate, but the facts out of which they arise are many and, unfortunately from the standpoint of brevity of opinion, will need be recited.

W. B. Howell, the plaintiff's father and her predecessor in title, by a written lease dated January 27, 1912, demised to the Ocean Coal Company the premises in suit, being seven acres plus out of a one hundred and seventy acre tract of land in Sewickley Township, Westmoreland County. The lease, which was unrecorded, was for a twenty-five year term, beginning as of April 1,

1910, at an annual rental of two hundred dollars. The demised property was to be used "for a reservoir site . . . for the location of a reservoir, dam and pump house . . .". The lease granted the lessee "the right to lay, repair, maintain, and relay a pipe line from the said reservoir upon, under and through the said premises . . . to a point where the pipe line leaves the land of said William B. Howell"; "the right to locate, erect, repair, maintain and remove a power line over, across and through the premises"; and "the full right of ingress, egress and regress to and from all parts of the land occupied by said reservoir, dam, pump house, pipe line and power line, for all proper purposes within the terms of this agreement." The lease contained a covenant "That the water from said reservoir shall be used by [the lessee], *its successors or assigns,* upon the premises now or hereafter to be acquired by it or them." (Emphasis supplied).

As provided by the lease, it was the lessee's right to renew it for an additional term of ten years at the expiration of the specified term. Notice of the lessee's intention to exercise the renewal option was duly given on February 20, 1935. The lease also provided that, after the expiration of the renewal period, it should remain in effect from year to year unless and until terminated by the lessee on three months' written notice. The only other provision for the termination of the lease was upon the lessee's failure to pay the rent reserved. It was further agreed in the lease "That, upon the termination of this agreement, [the lessee] will deliver up the said premises hereby leased, dam, reservoir, and pump house structure to the [lessor] all in good and substantial repair and condition."

On October 1, 1937, the Ocean Coal Company, by deed duly recorded, granted and conveyed to the Herminie Land Company certain tracts of land in Westmoreland County. Although the deed did not specifically mention the Howell lease, it did contain a clause

conveying ": . . Also any other tracts or pieces of ground, coal and other minerals, oil, gas, and easements, estates, rights and interests in lands whatsoever, which have been heretofore acquired or reserved by the said grantor and are now owned by it. Together with all and singular the buildings, structures and improvements of whatsoever nature, ways, streets, alleys, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of the said grantor, in law, equity, or otherwise howsoever of, in and to, or out of the same and every part thereof."

Some fourteen months later, by deed dated December 14, 1938, and duly recorded, the Herminie Land Company sold, assigned, transferred and set over to one Herbert Stubbs "All the following . . . leases, together with all of the Herminie Land Company's rights, privileges, duties and liabilities thereunder, or therein, and together with any and all [equipment] forming a part of the general system for the supply of water, . . . to wit: 1. Agreement of lease and right-of-way made between W. B. Howell and the Ocean Coal Company, dated January 27, 1912, . . . , and the renewal thereof dated February 20, 1935." In the deed from the Herminie Land Company to Stubbs, the grantor described itself as "the owner of [certain agreements and equipment] all forming part of a general system used for the purpose of supplying water to certain properties and users within the Village of Herminie No. 1, and Herminie No. 2, in the Townships of Sewickley and Hempfield, County of Westmoreland . . .". The deed further recited that "All of the above set out Agreements of lease or rights-of-way were sold, assigned, transferred and set over unto Herminie Land Company . . . by deed of Ocean Coal Company, dated October 1, 1937, . . .".

The rights of the defendant township are said to arise out of a deed from Stubbs to the township of December 1, 1939, which was recorded on the same date. Stubbs' conveyance to the township contained substantially the same granting clause as the one in the deed to him from Herminie Land Company as above-quoted. Specifically, it enumerated the Howell lease as among the rights thereby transferred.

The parties to the instant suit further stipulated that the plaintiff and her predecessor lessor had received the agreed annual rental from the various lessees prior to the defendant township; that the plaintiff had received from Stubbs on April 1, 1939, a check for the rent for the year ending April 1, 1940, which she had cashed and used; and that the defendant township had annually tendered to the plaintiff its check or warrant for $200 to cover the annual stipulated rental under the Howell lease but that the tender had been refused by the plaintiff. Within a day or two of the deed from Stubbs to the township (i.e., on December 2nd or 3rd, 1939) the township had delivered to the plaintiff its warrant for the rent for the year beginning April 1, 1940. The plaintiff retained the warrant until August 31, 1940, when it was returned to the township by the plaintiff's attorney with an accompanying letter which stated that the plaintiff "[did] not recognize [Sewickley Township] as having any rights whatsoever under the purported lease of the dam on the Howell farm, . . .".[1] The stipulation of the parties also states that the township's warrants for the rent were refused as not constituting legal tender. But, that statement of fact is to be taken subject to what certain undisputed documentary proofs disclose.

---

[1] Due to a change of solicitor for the township the letter of August 31, 1940, from the plaintiff's attorney refusing the warrant for rent was not officially delivered to the township until September 17, 1940.

On December 1, 1939, the date of the conveyance from Stubbs, the township created a water district under the Act of May 1, 1933, P. L. 103 (53 P.S. § 19093-1609), for the purpose of supplying water to the village of Herminie and adjacent territory. Some time prior to March 27, 1941, the township, acting by its officers and employees, started to tear down the stone pump house referred to in the Howell lease and proceeded with the erection on the demised property of a new pump house, a filtration plant and a storage tank (no structure similar to the latter two having been on the leased premises before), and the laying of a new pipe line from the reservoir. This work was undertaken by the township in conjunction with the Works Progress Administration of the government of the United States and was pursued subsequent to the court's denial of the plaintiff's petition for a mandatory injunction in this case. It is also stipulated of record that at least a part of the plans and the township's contacts with the Works Progress Administration had been made before September 17, 1940.

After the completion of the water project, at a cost of $128,000, the township began supplying water to domestic consumers in the town of Herminie, to business houses and to a school district with an enrollment of approximately 1200 pupils. All of these consumers were located within the township's boundaries. The preceding lessees under the Howell lease, viz., Ocean Coal Company, Herminie Land Company and Stubbs, had for many years furnished water from the reservoir on the demised property to both commercial and domestic users in the village of Herminie. However, it does not affirmatively appear that either the plaintiff or her predecessor in title had actual knowledge of that circumstance.

The plaintiff filed her bill in equity in this case on April 2, 1941, and on April 8, 1941, filed a petition for a mandatory injunction thereon. Both the bill and petition averred that the defendants (the township and its

supervisors) had entered upon the premises without lawful authority and were there excavating with the announced intention of laying a water pipe to take water away from the reservoir without compensating the plaintiff therefor; that they had cut down and destroyed trees and shrubbery and were removing large quantities of dirt and earth; that they were maintaining a water closet in close proximity to the reservoir which would contaminate the water; and that their acts in the aggregate amounted to a continuing trespass from which great and irreparable damage and injury to the plaintiff would ensue unless the injunctive relief sought were granted.

In their answer to the plaintiff's petition for a mandatory injunction, the defendants set forth the township's alleged rights under the Howell lease; that "the destruction [of the pump house] is only incidental to the erection of a larger and more adequate pump house and facilities to be wholly built upon the said demised premises and is only a competent extension of the use for which the premises were originally demised by the said lease between W. B. Howell and the Ocean Coal Company in order to comply with the requirements of the Department of Health and the regulations of the Department of Forests and Waters of the Commonwealth of Pennsylvania"; that no excavated earth was being deposited on the plaintiff's lands other than the demised premises;[2] and that any injury that the plaintiff might have suffered or would suffer from the township's action was cognizable exclusively at law. The defendants further alleged facts to support an estoppel of the plaintiff to deny the township's rights as lessee of the Howell lease by assignment.

The defendants' answer to the bill of complaint contained substantially the same matter as was set forth

---

[2] It was later stipulated by the parties that some six hundred cubic yards of dirt had been deposited on other lands of the plaintiff not covered by the Howell lease.

in their answer to the plaintiff's petition for an injunction and alleged, as new matter, that the facilities on the demised property had been enlarged and that water had been distributed to the residents of the villages of Herminie No. 1 and Herminie No. 2 during the occupancy of the premises by the lessees predecessor in title to the township and that the plaintiff's acceptance of rent from such predecessors amounted to an acquiescence in the uses made of the premises under the Howell lease. The township also averred that the water district which it had created had been set up in compliance with law. This, the plaintiff denied.

The fundamental question in the case is whether the defendant township acquired by the assignment from Stubbs the rights of lessee under the Howell lease. Related questions are: (1) whether the plaintiff is estopped to deny the Ocean Coal Company's assignment of the Howell lease to the Herminie Land Company, (2) whether the use which the township is making of the premises is a violation of the lease, (3) whether the plaintiff is estopped from so asserting, and (4) whether the plaintiff has a full, adequate and complete remedy at law. The appellant's incidental contention that the township's water district was invalidly established is wholly irrelevant to the present proceeding.

It is the appellant's contention that the deed from Ocean Coal Company to Herminie Land Company did not embrace an assignment of the Howell lease and that, consequently, the defendant township acquired no rights under that lease by virtue of the subsequent deed from Stubbs, the grantee of Herminie. As the deed from Herminie to Stubbs, as well as the deed from Stubbs to the township, each specifically identified the Howell lease as among the subjects thereby conveyed, it is apparent that the question raised by the appellant turns solely upon whether Ocean Coal Company's deed to Herminie Land Company was intended to, and did, assign the Howell lease.

The lease itself contained no restrictions upon its being assigned. On the contrary, it contemplated its possible assignment. Certain rights thereby created in the lessee were expressly made to run also in favor of the lessee's "successors and assigns". Nor was the lessor's consent to an assignment required by the terms of the lease. While it is true that Ocean's deed to Herminie did not mention the Howell lease, *eo nomine,* as a part of the intended grant, it did purport to convey ". . . any other . . . estates, rights and interest in land whatsoever, which have been heretofore acquired or reserved by the said grantor and are now owned by it." That a lease is an interest in land and, as such, embraced by the comprehensive terms of the clause just quoted can hardly be disputed. See *Ottman v. Albert Company,* 327 Pa. 49, 54-55, 192 A. 897; *Harding v. Seeley,* 148 Pa. 20, 24, 23 A. 1118; *Dan Cohen Realty Co. v. National Savings & Trust Co.,* 36 F. Supp. 536, 538; Tiffany on Real Property (3rd Ed.) §§ 25, 74, 76 and 953. In view of the breadth of Ocean's conveyance to Herminie and in the absence of any specific exclusion of the Howell lease therefrom, it would be unreasonable to construe Ocean's deed to Herminie as excluding an assignment of the Howell lease. To do so would be directly contrary to the construction which Ocean and Herminie had placed upon the conveyance between them. Upon delivery of the deed, Ocean forthwith surrendered to Herminie the premises demised by the Howell lease and Herminie immediately entered thereupon as the lessee. It is beyond question that Ocean intended to grant to Herminie and the latter understood it was receiving from Ocean an assignment of the Howell lease.

However, the appellant argues that, to be a good assignment, Ocean's deed should have contained an internal reference to the lease. The cases cited [3] for the prop-

---

[3] *Vitro Manufacturing Co. v. Standard Chemical Co.,* 291 Pa. 85, 95-96, 139 A. 615; *Stucker v. Shumaker,* 290 Pa. 348, 352-353, 139 A.

osition are not presently in point. Each of them was concerned with whether certain memoranda, consisting of two or more apparently unrelated documents, were sufficient to satisfy the requirements of the Statute of Frauds. The question here presented is not whether there was an enforceable contract but whether an admittedly valid deed operated, inter alia, to assign a specific lease.

In any event, the plaintiff's conduct estopped her from denying that the Howell lease was assigned by Ocean to Herminie. Upon entering into possession of the demised premises, consequent upon Ocean's deed, Herminie assumed and discharged the liabilities of lessee under the Howell lease with the acquiescence of the plaintiff who received and accepted from Herminie the rentals due under the lease. Likewise, upon Herminie's express transfer and assignment of the lease to Stubbs, the plaintiff knowingly treated the latter as lessee and received from him the rentals due under the lease. It is of no present importance to the question of Ocean's assignment of the Howell lease that the plaintiff refused to accept rental from the township after the assignment by Stubbs. The plaintiff did in fact retain the township's warrant for the first year's rent for nine months before returning it. During that time the township was in possession of the demised property and had obligated itself in respect thereto without objection or remonstrance from the plaintiff. Her continued refusals of the township's warrant for the first year's rental, down to March 27, 1941, were solely for the expressed reason that the township had acquired no rights in the Howell lease by virtue of the assignment from Stubbs. It was not until that date that plaintiff's attorney in his letter returning the township's re-offered warrant for

114; *Paturzo v. Ferguson,* 280 Pa. 379, 384-385, 124 A. 481; *Manufacturers Light & Heat Co. v. Lamp,* 269 Pa. 517, 520, 112 A. 679; and *Stein v. Camden Fibre Mills, Inc.,* 148 Pa. Superior Ct. 348, 351, 25 A. 2d 741.

the first year's rental and its check for the then accruing second year's rental first assigned a want of legal tender as an additional reason for the plaintiff's unwillingness to accept the township's payment of the rental. It was then too late to interpose that objection so far as affecting the township's prior tenders was concerned.

Were the use which the township made of the water from the reservoir a violation of the lease, it amounted at most to a breach of covenant and not a breach of condition. Even if this were doubtful, it is a well-established principle of law, applicable in all cases, that, wherever possible, a restriction upon the use of land will be construed as a covenant rather than as a condition: *Commonwealth ex rel. v. Delaware Division Canal Company,* 332 Pa. 53, 59, 1 A. 2d 672. But, it is by no means clear that the township's use of the water for appropriate municipal purposes within its own territorial limits constituted any breach of the covenant. The covenant did not purport to exclude uses of water by the lessee, its successors and assigns off the demised premises: cf. *Todd v. Sablosky,* 339 Pa. 504, 508, 15 A. 2d 677.

And, here again, the plaintiff's conduct estopped her from asserting that the use made of the water by the township breached the covenant of the lease. Successively, Ocean Coal Company, Herminie Land Company and Stubbs all had supplied residents of the village of Herminie with water for domestic and commercial uses from the dam on the Howell property. And, while there was no affirmative proof that the plaintiff had knowledge of that circumstance, neither is there any evidence that she was without such knowledge. The use so made of the water was an open and notorious fact necessarily widely known locally and whereof the plaintiff, in connection with her application for a mandatory injunction, may well be considered to have had notice.

The adequacy of the plaintiff's remedy at law is so obvious as to require little discussion. Apart from the plaintiff's evident desire to bring about a forfeiture of

the leasehold so as to compel the township to deal with her on her own terms, substantially the only damage whereof she complains is the dumping of some excavated earth on her property. Even as to that she has not yet offered proof of the extent of such damage, if any. The fact that the township tore down the old pump house and replaced it with a new and more modern one at large public expense was not a violation of the lessee's covenant to deliver up the demised premises to the lessor at the end of the tenancy with the "dam, reservoir and pump house structure all in good and substantial repair and condition." It was, rather, in keeping with the intendment of the covenant. The lease was virtually one in perpetuity so long as the lessee desired to keep the premises and paid the annual rental therefor when due. It was certainly within the contemplation of the parties to the lease that replacements would become necessary and that they might be made by the lessee without imperilling the leasehold. See *Todd v. Sablosky*, supra, where this Court, in construing a restriction in a lease against the use of demised property for certain businesses, said that it was "clear that the covenants . . . were not intended to prevent *any* commercial use of the premises." Any damages that the plaintiff has suffered from the township's use of the leased property can both adequately and completely be recovered at law.

In any view, the plaintiff has not shown the "clear legal right to the use, occupation or enjoyment of the property" requisite to the granting of the equitable relief sought: *Myersdale & Salisbury Street Railway Company v. Pennsylvania & Maryland Street Railway Company*, 219 Pa. 558, 565-566, 69 A. 92. Moreover, the adverse and serious effect upon the public interest, were the relief which the plaintiff seeks granted, argues strongly for the withholding of equity's grace. In *Becker v. The Lebanon and Myerstown Street Railway Company*, 188 Pa. 484, 495, 41 A. 612, where, admittedly, a legal right of the plaintiff had been infringed, this Court said that

"In view of the learned judge's findings in the present case, on the loss to the defendant, the inconvenience to the public, the smallness of the injury to the complainant and its easy compensability in money, he could scarcely have reached any other conclusion than that complainant, however clear his right, should be left to his remedy in damages." The supportable findings of the learned chancellor in the instant case make the above-quoted ruling peculiarly apposite here. See also *Caruthers v. Peoples Natural Gas Company*, 155 Pa. Superior Ct. 332, 338, 38 A. 2d 713, where, in the case of an *admittedly illegal* entry upon the complainant's land, a mandatory injunction to require restoration of the status quo ante was denied because the burden that would be thereby imposed upon the defendant was "disproportionate to the ultimate benefit" to the complainant whose appropriate remedy was at law for damages. Cf. *McNanamy v. Firestone Tire and Rubber Company*, 114 Pa. Superior Ct. 282, 286, 173 A. 491. The conclusion is inescapable that the learned court below acted properly when it denied the plaintiff the equitable relief sought and certified the controversy to the law side of the court.

The contention of the appellant that the water district of the township was not created validly bears no material relation to the respective rights of the parties to the premises demised by the Howell lease which constitute the subject-matter of the plaintiff's complaint. This is not a proceeding to test the legality of the water district. We cannot, therefore, appropriately concern ourselves with that question. However, it may be observed in passing that the plaintiff mistakenly relies upon provisions in the Public Utility Law which are pertinent where a municipality furnishes a public service to customers beyond its own territorial boundaries. Such is not the situation in this case.

The decree of the court below is affirmed at the appellant's costs.