Robert P. Topley and Barbara A. Topley, his wife, Appellants v. Buck Ridge Farm Construction Company, et al., Appellees.

Argued April 6, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*I. Leonard Hoffman,* with him, of counsel, *Ettinger, Poserina, Silverman, Dubin & Anapol,* for appellants.

*William B. Koch* and *Theodore K. Warner, Jr.,* with them, *Koch, Phelps & Salus; John J. Kerrigan, Jr.; Stuckert, Yates & Krewson; Edwin L. Scherlis; Frank & Margolis,* for appellees.

OPINION BY JUDGE ROGERS, May 31, 1977:

Robert P. Topley and Barbara A. Topley, his wife, own a dwelling house and lot in a residential development called Gravel Hill Farms in Upper Southampton Township, Bucks County. The eastern boundary of the Topleys' lot is the middle of a stream called Mill Creek. The southern boundary of their lot is a public road called Rydal Lane. Prior to the events giving rise to this lawsuit, Rydal Lane came to a dead-end at Mill Creek.

Buck Ridge Farm Construction Company is a land developer which owned the land across Mill Creek from the Topleys' lot. Buck Ridge filed a plan for the subdivision of its land with Upper Southampton Township proposing, *inter alia,* to construct a bridge to carry Rydal Lane over Mill Creek, thus providing access to its development from the roads and streets in the Gravel Hill Farms development. Buck Ridge entered into a written developer's agreement with the township to install certain improvements including "a metal plate arch type bridge over Mill Creek." Buck Ridge additionally agreed to construct all improvements necessary for the development of its lands in accordance with township specifications, to dedicate

roads and streets shown on its development plans, and to execute and deliver to the township appropriate deeds of easement. The agreement provided, however, that the delivery or recording of deeds should not constitute an acceptance of any improvement as a public facility of Upper Southampton Township. Buck Ridge engaged James D. Morrissey, Inc. to construct the bridge; Buck Ridge or James D. Morrissey, Inc. engaged Tri-State Engineers and Land Surveyors to design the bridge.

The lawsuit with which we are here concerned commenced when the Topleys filed a complaint in equity naming Buck Ridge, Morrissey, Tri-State Engineers and Upper Southampton Township as defendants, and alleging that a masonry wing wall of the bridge was being placed on their property. They asked that the alleged trespass be enjoined; that the defendants be ordered to remove the encroaching structure and to restore the plaintiffs' premises to its original condition; that the plaintiffs be awarded compensatory and punitive damages; and for general relief. Each of the defendants filed answers denying a trespass based upon plans of the Gravel Hill Farms subdivision showing a hatched line about fifteen feet from and following the bank of Mill Creek on the Topleys' side, called on the plan "right-of-way for creek." This they asserted sufficiently marked the existence of an easement over the Topleys' land giving them a right to construct the wing wall of the bridge within its confines. After the pleadings were closed, all of the parties filed motions for summary judgment, some accompanied by depositions of witnesses. A judge of the court below entered an order, accompanied by a thoughtful opinion, (1) denying the plaintiffs' motion for summary judgment against the defendant township, (2) granting the township's motion for summary judgment against the plaintiffs, (3) granting plain-

tiffs' motion for summary judgment for compensatory
damages for trespass against the defendants, Buck
Ridge, Morrissey and Tri-State Engineers, such dam-
ages to be assessed in further proceedings and to be
limited to damages for trespass only for the time be-
ginning with the defendants' entry upon the plain-
tiffs' property and ending with the opening of the
bridge for public use, and (4) denying motions for
summary judgment filed by Buck Ridge, Morrissey
and Tri-State.  The court below found, properly on
this record, that there was no easement over the plain-
tiffs' property created by the hatched line on the plan
of Gravel Hill Farms which would provide any of the
defendants with the right to construct the bridge wing
wall on the plaintiffs' property; that the wing wall
was in fact located on the plaintiffs' property; and
that Buck Ridge, Morrissey and Tri-State were an-
swerable in damages.  The court below also properly
concluded that the township had not committed an act
of trespass since it had nothing to do with the loca-
tion or construction of the bridge.  The court below
limited the liability of Buck Ridge, Morrissey and Tri-
State to the time between their entry on the plaintiffs'
land and the date of the opening of the bridge to pub-
lic travel[1] because it concluded that on the latter date
the township accepted the bridge as a public bridge
of the township.  This acceptance, the court believed,
was evidenced by the fact that the traveling public be-
gan to use the bridge on its completion.  Although the
court below granted the township's motion for sum-
mary judgment, it declared that the township's ac-
ceptance of the bridge evidenced by public use was a
*de facto* condemnation of that part of the plaintiffs'
property on which the encroaching wing wall was lo-
cated.  The court below further declared that the

---

[1] This period is from sometime in August 1972 until early De-
cember of the same year.

plaintiffs could seek damages from the township by filing a petition for viewers pursuant to Section 502 (e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-502 (e). The court below reasoned that since the township took the plaintiffs' land when the public began to use the bridge, the other defendants' liability then ceased.

The plaintiffs alone have appealed from the court's order. The township, of course, prevailed below and Buck Ridge, Morrissey and Tri-State Engineers believe that liability limited to a few months' trespass is not a bad result for them in the circumstances. The plaintiffs say that the record does not support the court's conclusion that the township had accepted the bridge and by so doing committed a *de facto* taking of that portion of their land on which the wing wall was constructed. They further say that because the wing wall is clearly located on their property the court should have ordered Buck Ridge, Morrissey and Tri-State Engineers to remove it, and that the court's conclusion that the township had condemned their land improvidently foreclosed them from being rid of the offending wing wall. The plaintiffs' conclusion is based on a fundamental misconception of the law. They had no absolute right to a mandatory injunction. Relief in equity, where indicated, flows from the sound discretion of the chancellor. It is not the province of equity to compel the performance of unreasonable things. *Bird's Appeal*, 91 Pa. 68 (1879). Equity will not grant a mandatory injunction where it would have an adverse effect on the public interest, especially where the plaintiff's injury may be easily compensated in money. *Howell v. Sewickley Township*, 352 Pa. 552, 43 A.2d 121 (1945). The Topleys asked for compensatory damages as well as a mandatory injunction. In view of the fact that the bridge is now used by the

traveling public, including school buses, it was no abuse of the chancellor's discretion to limit their relief to money damages.

Although the township has not appealed, it also vigorously contends that the bridge is not and never has been a public bridge of the township because it never accepted it as such. We agree with the township. There is no evidence in this record that Buck Ridge offered to dedicate the bridge after its completion; nor could Buck Ridge alone effectively make such an offer because at least a part of the bridge was located on the Topleys' land. *See Board of Supervisors of North Coventry Township v. Silver Fox Corporation*, 10 Pa. Commonwealth Ct. 646, 312 A.2d 833 (1973). Nor does the record contain evidence supporting a conclusion that the township accepted the bridge as a public facility of the township. There was clearly no express acceptance; indeed the development agreement between Buck Ridge and the township clearly provided that even the acceptance and recording of a deed of easement for intended public improvements should not constitute an express acceptance. An implied acceptance may only be based upon unequivocal authoritative acts of the municipality evidencing its intention to accept. *Tri City Broadcasting Company v. Howell,* 429 Pa. 424, 240 A.2d 556 (1968). We find no acts whatsoever of the township evidencing an intention to accept this bridge. The history of this litigation is a history of rejection, not acceptance. An implied acceptance may also be indicated by long continued user by the public or by a combination of municipal acts and public use. *Milford Borough v. Burnett,* 288 Pa. 434, 136 A. 669 (1927). The Topleys commenced their suit before the bridge was opened. The process of filing pleadings and taking depositions consumed more than two and one-half years in the court below before it was submitted on motions for

366

summary judgment.[2] Use of the bridge by the traveling public during this time is not long continued public user, particularly in view of the fact that the matter was in litigation during all of this time. As for implied acceptance by combination of municipal acts and public use, as we have said the record reveals no acts of the township evidencing the intention to accept on the part of the township. Since there was no acceptance of the bridge by the township, there was no taking of the Topleys' land by the township, *de facto* or otherwise. There was, therefore, no basis for terminating the liability of Buck Ridge, Morrissey and Tri-State Engineers at any time after their trespass and we will vacate that portion of the order below.

This may be, and we hope is, one of those very rare cases where a judicial suggestion may be helpful in the resolution of a difficult and inordinately delayed problem. The able trial judge astutely recognized that the intervention of the township might be necessary to a solution of the problem created by the mistaken location of the wing wall. We have disagreed, however, with the lower court's view of the law and, as well, the result which would compel the township to pay most of the damages for the mistake which was primarily the fault of Buck Ridge, Morrissey or Tri-State Engineers and certainly their responsibility to avoid. Nevertheless, the bridge was intended to be a public bridge by the developer's contract; the township has a right to it; and the public needs it. If it is unreasonable to require the removal of the wing wall, the Topleys' wrong must be requited with money damages compensating them for the diminution in the

[2] The court below entered the order on the motions for judgment on October 17, 1975. It was appealed to the Superior Court on November 12, 1975, argued there on March 16, 1976, transferred by the Superior Court to the Commonwealth Court on August 19, 1976, and argued here on April 6, 1977.

market value of their property. The usual subdivision regulations require the provision of substantial guarantees by the developer to the township in the form of bonds and cash for the completion and ultimate offer of public improvements to the municipality. If Lower Southampton Township had such regulations and received and still holds development guarantees it would seem that settlement of this matter can promptly be accomplished by the able counsel representing all of the parties to this litigation.

We therefore enter the following

### ORDER

AND Now, this 31st day of May, 1977, the order of the court below granting the plaintiffs' motion for summary judgment as to Buck Ridge Farm Construction Company, James D. Morrissey, Inc. and Tri-State Engineers and Land Surveyors, Inc., is modified by vacating the limitation of damages assessed against those parties to the date of the ''opening of the bridge to the public''; and the said order as so modified is affirmed.