Pennsylvania Game Commission, Glenn L. Bowers and Jacob I. Sitlinger, Petitioners *v.* J. Paul Bowman et al., Respondents.

J. Paul Bowman et al., Petitioners *v.* Pennsylvania Game Commission, Glenn L. Bowers and Jack I. Sitlinger, Respondents.

Argued February 1, 1984, before Judges Rogers, Palladino and Barbieri, sitting as a panel of three.

*Stuart M. Bliwas,* Chief Counsel, for petitioner/respondent, Pennsylvania Game Commission.

*Timothy D. Sheffey*, with him *James T. Reilly, Egli, Reilly, Wolfson, Sheffey and Schrum*, for respondents/petitioners, J. Paul Bowman and Lillian Bowman, his wife, et al.

OPINION BY JUDGE ROGERS, April 9, 1984:

The Pennsylvania Game Commission has appealed from an order of the Board of Property of the Commonwealth's Department of Community Affairs declaring that the appellees, owners of land adjoining the eastern and western boundaries of lands in title to the State Game Commission (game lands),[1] have an irrevocable license to use a road crossing the game lands for access to their properties.

In 1933, Warren Brubaker, the father and predecessor in title of one of the appellees, made improvements to a logging road extending from U.S. Route 322 across the game lands which were then owned by Margaret C. Buckingham and John P. C. Alden, trading as Cornwall Estate, to his, Brubaker's land, and thence to and beyond the lands now owned by the other appellees. The improvements consisted of the installation of drainage culverts, the application of crushed stone, the filling and grading of the road and the trimming of the undergrowth—all in order that the road could be safely traveled by an automobile. In the succeeding years and until the road was obstructed by the Game Commission in 1980, the Brubaker family and the other appellees owning land adjacent to the game lands used and maintained the road for access to their land.

In 1938 Margaret Buckingham and John P. C. Alden conveyed the later game lands to the City of

---

[1] The record owner of these lands is Commonwealth of Pennsylvania, For the Use of the State Game Commission.

Lebanon. In January, 1946 the City of Lebanon conveyed it to the City of Lebanon Authority which, in April, 1980, conveyed it to the Commonwealth of Pennsylvania, For the Use of the State Game Commission.

Shortly after taking possession of the game lands, the Game Commission erected metal gates and installed cables across the road thus effectively denying the appellees the use of the road and access to their properties at least by vehicle. In June 1981, the appellees, claiming a right of easement based upon a recital in the 1938 deed from Buckingham and Alden to the City of Lebanon, filed a complaint with this court seeking an order enjoining the Game Commission and two of its employees from obstructing the road. We transferred the matter to the Board of Property which held hearings and, by order dated February 8, 1983, determined that the appellees have an irrevocable license to use the road.

Both the Game Commission and the appellees have filed petitions for review of the Board's action. The Game Commission contends that the Board erroneously found that the appellees have an irrevocable license to use the road. The appellees say that the Board erred in not concluding that they had easements over the road through the game lands.

A license is a personal and initially revocable privilege to perform an act or series of acts on the land of another. *Hennebont v. Kroger Company*, 221 Pa. Superior Ct. 65, 289 A.2d 229 (1972). A license to use another's land will become irrevocable where the licensee, in reliance upon it, treats his land in a way he would not have treated it except for the license, that is, by spending money for such changes as would prevent his being restored to his original position. *Bieber v. Zellner*, 421 Pa. 444, 220 A.2d 17 (1966).

The evidence of expenditures of money or labor by the appellees on their lots in reliance upon the asserted license is rather thin. The Brubaker family once constructed on its land a cabin, which has since fallen into disrepair; the appellee, J. Paul Bowman permitted a friend to place a house trailer on his property; and the Bowman children once constructed a lean-to. There is no evidence that the other appellees made improvements to their properties. Thus, the record does not support the Board's conclusion that all, if any, of the appellees have an irrevocable license to use the road.

However, the appellees contended below, and still contend that they have easements in the road crossing the state game lands and we agree with them.

The deed from Buckingham and Alden conveying the game lands to the City of Lebanon contains the following provision:

UNDER AND SUBJECT TO THE FOLLOWING
RESERVATIONS:

(1) *The parties* hereto, for themselves, their heirs, executors, administrators and assigns, *COVENANT AND AGREE*, each with the other, *that the parties of the first part, and as well the owners of adjoining "Wood Lots," their heirs, executors, administrators and assigns, shall have, enjoy and possess the right of full ingress, egress and regress* from premises and lands adjoining the hereinbefore described premises, and owned by the parties grantor herein and other adjoining owners, to the public roads now located, or hereafter to be located adjoining and bounding the hereinbefore described premises, *over, thru and upon the land and premises hereinbefore conveyed, by use of*

*the present "wood roads" as now laid out and constructed upon the premises hereinbefore conveyed,* or upon any other "wood roads" to be laid out at other places or points upon said premises, in lieu, place and instead of said "wood roads" which subsequent relocation and placement of said "wood roads" shall not be to the unreasonable inconvenience of the parties grantor herein and said others, or their heirs, executors, administrators and assigns, and their right in such respect to use, maintain and repair said "wood roads" being optional, and within their own determination and discretion, as well as to the extent thereof, and incidental thereto, to make said repairs at their option, through employees and representatives, and in work thereon in a reasonable and efficient manner, with workmen, horses, carts, automobiles, trucks and tractors, and steam rollers, in the repair and maintenance of said "wood roads." (R. 580a). (Emphasis supplied.)

This provision does not appear in either the 1946 deed to the City of Lebanon Authority or the 1980 deed to the Game Commission.

A claim of easement, based on circumstances similar to those in the instant case, was upheld by the Pennsylvania Superior Court in *Ozehoski v. Scranton Spring Brook Water Company,* 157 Pa. Superior Ct. 437, 43 A.2d 601 (1945). The facts of that case were that the Susquehanna Coal Company permitted a predecessor of the Scranton Spring Brook Water Company to lay water lines under the former's lands which it conveyed to the Susquehanna Collieries Company "subject also to the following easements, rights of way, etc., viz: All rights of way for pipe lines . . . through

the premises . . . which are or may be adverse to the title hereby conveyed." The Collieries Company sold the land to one Everett who sold it to Ozehoski, both by deeds neither of which referred to the easement for the water lines. Ozehoski brought an action in ejectment for the removal of the water pipes. The Superior Court held that the fact of the installation of the water pipes was evidence of a prior grant of easement or an agreement equivalent to a grant of easement by the Susquehanna Coal Company to the predecessors of the Scranton Spring Brook Water Co. and that the recital in the deed of the Susquehanna Coal Co. to the Susquehanna Collieries Company just quoted was the assertion of the easement in recognition of the prior grant.

Here, as in *Ozehoski,* the circumstances under which improvements were made to the road and its use by the appellees' predecessors in title "imply, between the only parties concerned, a then or subsequent grant of the easement, or an agreement, the equivalent of a grant." *Id.* at 440, 43 A.2d at 602. The recital in the 1938 deed that the conveyance was "subject to" the rights of the owners of the wood lots to use the wood roads "assert [ed] an easement in favor of [the owners of the wood lots] in recognition of a prior grant or agreement." *Id.*

It is not important that the deed to the Game Commission and its immediate predecessors in title did not refer to the easement. An easement created by grant, or its equivalent, is in nature and substance a covenant running with the land. *Goldberg v. Nicola,* 319 Pa. 183, 178 A. 809 (1935); *Ozehoski v. Scranton Spring Brook Water Company.* The use of the phrase "subject to" as a preface to the assertion of the easement in the 1938 deed qualified the estate conveyed to the

City of Lebanon and charged the land with the burden of the easement.

The Game Commission, contending that the recital in the deed is a reservation, argues that the appellees' predecessors in title, not having been parties to the 1938 deed from Buckingham and Alden to the City of Lebanon, did not obtain an easement by virtue of that conveyance. This argument of course fails first because, as we have seen, the recital in the 1938 deed was not a mere reservation but imposed upon the land the burden of an easement in favor of the owners of the wood lots. We will, however, extend our considerations of the Game Commission's thesis.

At common law, an easement could not be created by a reservation in favor of a stranger to a deed. 2 Thompson on Real Property §334; 28 Corpus Juris Secundum, "Easements" §29; *contra,* Restatement of Property §472 (1936).

The Game Commission suggests that in the case of *Pribek v. McGahan,* 314 Pa. 529, 172 A. 709 (1934), the Pennsylvania Supreme Court adopted the common law rule prohibiting the creation of an easement by a reservation in favor of a stranger. We also disagree with this contention. The facts of *Pribek* are as follows: A conveyed a portion of his lot to B by deed reserving to A a right of way across the land conveyed "in accordance with articles of agreement of this date of the parties hereto." The agreement, which was properly recorded, provided that A would open and maintain a passageway across his land so that B and B's tenants would have access to the rear of their lot and reserved to A the right to cancel the agreement and close the passageway if B should sell his property. A and B each later sold their lots. Pribek eventually acquired a portion of B's lot and a portion of the lot

formerly owned by A. McGahan acquired the balance of the land owned by A and closed the passageway. Pribek filed suit claiming a right to use the passageway by virtue of certain clauses in McGahan's chain of title and by the agreement between A and B. The Pennsylvania Supreme Court held that Pribek had no right of easement across McGahan's land by the deed from A to B or the agreement and that the reservation for an easement contained in McGahan's chain of title could not inure to Pribek's benefit since neither she nor anyone through whom she claimed was a party to the deeds.

*Pribek*, however, is not applicable to the present case because, in addition to the fact that *Pribek* concerned only a reservation, the appellee's predecessors were not strangers to the 1938 deed since they owned the adjoining wood lots. As we have said, Buckingham and Alden, during their ownership of land which is now a part of the game lands, granted to or made agreements for easements with the owners of the wood lots which agreements were later asserted in the 1938 deed to the City of Lebanon.

As noted, the lots of some of the appellees adjoin the eastern boundary of the game lands while those of others adjoin or are near the western boundary. The Game Commission contends that the provision in the 1938 deed for the use of the wood roads by the owners of the wood lots is ambiguous and that if an easement was created it was intended to benefit only those appellees who owned land adjoining the western boundary of the game lands. This argument too is without merit. The term "wood lots" appears twice in the description of the land conveyed by the 1938 deed. It first appears in the description of the eastern boundary of the game lands as follows:

> [T]hence by land (Farmer's Wood Lots) of W. Brubaker, Bucher Estate, H.C. Rohland, A.C. Krall and H. Bucher North fifty-eight degrees and twenty four minutes East (N. 58° 24′ E.) one thousand eight hundred eighty five (1885.0) feet to a stone; . . . .

It next occurs in the description of the western boundary of the game lands:

> [T]hence by various wood lots South fifty-three degrees and one minute West (S. 50° 01′ W.) four thousand three hundred seventy four and two tenths (4374.2) feet to a stone; . . . .

Also, plans in evidence show that the wood lots of some of the appellees adjoin the eastern and some the western boundary of the game lands.

The Game Commission also contends that the Board of Property committed reversible error by not adhering to its own rules of procedure. In this vein, the Game Commission complains of the failure of the Board explicitly to rule on its motions for a more specific complaint and to dismiss for lack of jurisdiction. The appellees contend that these matters were disposed of at a pretrial conference; and this seems to be the case because the Game Commission went to the Board of Property's hearing without further complaint on these scores. The Game Commission also complains of the Board's issuance on appellees' ex parte request of an order directing it to produce documents. This order was vacated before the documents were produced.

An order of an administrative agency will not be disturbed on appeal for harmless error. *Campbell v. Department of Environmental Resources*, 39 Pa. Commonwealth Ct. 624, 396 A.2d 870 (1979). The Game

Commission has not demonstrated, nor does the record suggest, that it was adversely affected by any of the alleged procedural irregularities.

The Game Commission finally complains that the Board of Property improperly retained jurisdiction over two of its employees and that the injunctive relief requested by the appellees was inconsistent with the Board's jurisdiction.

As noted, the appellees originally filed a complaint with this court seeking injunctive relief against the Game Commission and two of its employees. Because the appellee's claim involved title to land occupied or claimed by the Commonwealth, a subject committed in the first instance to the Board of Property, we transferred the complaint to the Board of Property. Both our action and the Board's response, the latter consisting only of a determination of the merits of the appellees' claim, were consistent with the Board's jurisdiction "to hear and determine cases . . . brought by persons who claim an interest in the title to lands . . . claimed by the Commonwealth." Section 1207 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177 *as amended,* 71 P.S. §337; *Stair v. Pennsylvania Game Commission,* 28 Pa. Commonwealth Ct. 457, 368 A.2d 1347 (1977). The fact that the appellees' complaint, improperly first filed in this Court, requested injunctive relief against the Game Commission and two natural persons did not divest the Board of Property of its jurisdiction to determine the appellees' claim of an interest in the game lands.

The order of the Board of Property is vacated and the records are remanded to the Board of Property for an order declaring the appellees' rights of easement in the road crossing the game lands consistent with this opinion.

#### ORDER

AND Now, this 9th day of April, 1984, the order of the Board of Property dated February 8, 1983 is hereby vacated and we remand these records and the Board of Property is directed to enter an order declaring that the appellees have rights of easement over the road in question. Jurisdiction is relinquished.