542 A.2d 220

LARA, Inc., Appellant *v.* Dorney Park Coaster Co., Inc. and South Whitehall Township, Appellees.

Argued April 19, 1988, before President Judge CRUMLISH, JR., and Judge MCGINLEY, and Senior Judge NARICK, sitting as a panel of three.

*Thomas R. Elliott,* with him, *Frank S. Poswistilo* and *Charles W. Elliott, Brose and Poswistilo,* for appellant.

*Richard F. Stevens,* with him, *John V. DeMarco, Butz, Hudders, Tallman, Stevens & Johnson,* and *Howard A. Wiener* and *Joel B. Wiener,* for appellee, Dorney Park Coaster Co., Inc.

*Thomas H. Dinkelacker,* with him, *Blake C. Marles, Weaver, Mosebach, Piosa, Hixson, Wallitsch & Marles,* for appellee, South Whitehall Township.

OPINION BY SENIOR JUDGE NARICK, June 6, 1988:

This is an appeal by LARA, Inc. (LARA) from a decision of the Court of Common Pleas of Lehigh County denying its request for injunctive relief. We affirm.

For approximately twenty-seven years, LARA or its predecessor corporation operated car races at a race track on the grounds of Dorney Park Coaster Company (the Park), an amusement park located in South Whitehall Township (Township), Lehigh County. During the past fifteen years, LARA entered into three separate license agreements with the Park. The dispute before the court revolves around the third operative agreement which is dated April 16, 1979. This agreement refers to LARA as licensee and the Park as licensor, and provided in paragraph 15 that "The Licensor hereby grants to

the Licensee the option of renewing this License provided that written notice of its intention to do so is given to the Licensor not later than October 15 for each successive year". The agreement further provided for termination of the license by the Park upon breach of any covenant or condition of the agreement by LARA or upon the occurrence of certain specified events. The agreement makes no provision for termination of the license for reasons other than those specified in the agreement. It is undisputed that this April 16, 1979 agreement is a license and that LARA did not breach any terms of the license agreement.

On September 8, 1986, LARA notified the Park in writing of its intention to renew the license for the 1987 season. The record reveals that on October 23, 1986 the Park notified LARA in writing that the license would not be renewed, and that this action was required pursuant to an agreement with the Township.[1] The letter further indicated that pursuant to a stipulation and order of court they were not able to discuss the matter further.[2]

On or about February 20, 1987, LARA filed a petition for injunctive relief[3] requesting the trial court to issue a preliminary injunction against the Park and the

---

[1] The record also indicates that sometime in October shortly before LARA's receipt of the written notice, LARA received oral notification that racing would be terminated at a meeting between LARA's president, Jerry Fried, and other Park officials.

[2] The record indicates that Appellees, the Park and the Township, were engaged in a battery of litigation. In settlement of these lawsuits, an agreement was entered between the parties in December of 1985 whereby the Park agreed to prohibit motorcar racing at the Park commencing with the 1987 racing season.

[3] LARA also filed on February 20, 1987 a complaint in equity alleging a breach of agreement by the Park and tortious interference of contractual relations by the Township, and seeking relief in the nature of an injunction and/or damages.

Township which would permit LARA to conduct stock car races for the 1987 and subsequent racing seasons in accordance with the April 16, 1979 agreement, and to grant such other appropriate interim relief. On March 4, 1987, a rule was entered upon Appellees, the Park and the Township to show cause why a preliminary injunction should not issue.

On March 23, 1987, a preliminary injunction hearing was held. The record discloses that the issue at the preliminary injunction hearing was limited to whether LARA had a right to continue racing under the April 16, 1979 agreement. Any allegations LARA had made with respect to its complaint in equity regarding tortious interference of contractual relations would not be addressed at the injunction hearing. During the course of the hearing, the trial court noted that because the issue was whether or not LARA had a right to continue racing pursuant to the license agreement that in essence the trial court would be issuing a final determination because it was deciding LARA's rights under the license. Counsel for LARA disagreed with the court's decision to treat the preliminary injunction as a final hearing on the injunction issue.

Subsequently, the trial court rendered an opinion which concluded:

It must be remembered that at this moment the Court is being requested to issue an injunction. The matters of the reasonableness of the notice of the revocation of the license and damages flowing from the lack of sufficient notice together with any damages arising out of a possible tortious interference by the Township with the contractual rights of LARA must be handled at law in a subsequent proceeding in the event that LARA cannot now show that it has no adequate remedy at law. The Court has decided that

LARA holds a license, and that the license is terminable upon reasonable notice, and not perpetual in nature. It may well be that the Park did not provide reasonable notice, but if that creates a cause of action for which LARA can be compensated by a sum of money, an injunction is not proper. Further if the license is terminable, LARA's injury is not 'permanent'. (Citation omitted.)

The trial court further reasoned that LARA had three assets: goodwill, business equipment and its license with the Park; and that any harm to these assets could be compensated by money damages. The trial court, acknowledging the unique nature of the race track (it was the only macadam race track in the area) concluded that in the absence of an agreement to the contrary the Park, as owner of the land where the race track was situated could terminate the license if it so desired. Based upon the foregoing, the trial court denied LARA's request for injunctive relief and transferred the matter from equity to the civil law department of the court noting that a jury could determine the reasonableness of the Park's notice to LARA and damages.

LARA presents three issues for our resolution: (1) whether the trial court erred in treating LARA's application for preliminary injunction as a final hearing on the merits; (2) whether the trial court erred in refusing to admit at the preliminary injunction proceeding evidence regarding LARA's claims of tortious interference with contractual relations and abuse of governmental power; and (3) whether the trial court erred in failing to find and in refusing to enforce a binding contract created by LARA's exercise of its option to renew the license for the 1987 season.[4]

---

[4] When reviewing a court's decision denying a preliminary injunction, we must determine whether the decision is supported by

It is well settled that it is improper for a trial judge to treat a hearing on an application for a preliminary injunction as a final hearing on the merits, and as a basis for a final decree unless so stipulated by the parties. *Soja v. Factoryville Sportsmen's Club*, 361 Pa. Superior Ct. 473, 522 A.2d 1129 (1987); *Naus and Newlyn, Inc. v. Mason*, 295 Pa. Superior Ct. 208, 441 A.2d 422 (1982); *Township of Clinton v. Carmat, Inc.*, 288 Pa. Superior Ct. 433, 432 A.2d 238 (1981); *Raw v. Lehnert*, 238 Pa. Superior Ct. 324, 357 A.2d 574 (1976); *Crestwood School District v. Topito*, 76 Pa. Commonwealth Ct. 321, 463 A.2d 1247 (1983). The rationale against consolidation of these two proceedings is that there are separate and distinct standards which govern a request for a preliminary injunction and a request for a permanent injunction. A preliminary injunction turns on the presence of imminent, irreparable harm, while a permanent injunction is warranted if no adequate remedy at law exists for a legal wrong. *Soja*.[5]

---

reasonable grounds. *Price v. Grencavage*, 109 Pa. Commonwealth Ct. 361, 531 A.2d 108 (1987). A party seeking a preliminary injunction must establish (1) immediate and irreparable harm not compensable by damages; (2) greater injury resulting from a refusal than from a grant of the preliminary injunction; (3) effectiveness of the injunction in restoring the status quo; and (4) an actionable wrong abatable by the injunction. *Price*. An injunction will be granted if the petitioner's right to relief is clear and the wrong is manifest. *Id*.

[5] In discussing the inappropriateness of treating a preliminary injunction hearing as a final injunction proceeding, the Superior Court stated in *Soja*:

Certainly, it is unfair for a court to determine an action based upon a different legal standard than that by which the litigants believed themselves to have been governed. It is the antithesis of due process to bring someone before a court to defend himself on one basis if the court then reaches its decision on a different basis. It is also unfair to reach a final decision after a preliminary proceeding. A

In the matter herein, the record is devoid of any stipulation by the parties that the hearing on LARA's application for preliminary injunction should be treated as a final hearing on the merits. On the contrary, counsel for LARA objected to converting the matter to a final hearing on the merits contending that LARA did not have prior notice that the preliminary injunction hearing would be a final hearing. However, there was a stipulation before the trial court that the sole issue to be addressed at the preliminary injunction proceeding was whether LARA had a right pursuant to the April 16, 1979 license agreement to continue racing. Thus, a determination as to whether the license was revocable was a *common* standard which controlled both the determination as to whether a preliminary as well as a final injunction could issue.

Ordinarily, a license is revocable at will. *Kovach v. General Telephone Co. of Pennsylvania*, 340 Pa. Superior Ct. 144, 489 A.2d 883 (1985); *Thompson v. Department of Highways*, 214 Pa. Superior Ct. 329, 257 A.2d 639 (1969). A license is usually no more than a personal privilege to perform an act or series of acts on the land of another, and it conveys no interest or estate. *Thompson; Pennsylvania Game Commission v. Bowman*, 81 Pa. Commonwealth Ct. 381, 474 A.2d 383 (1984). However, Pennsylvania has recognized an equitable theory of an irrevocable license when there has been substantial expenditure in reliance on the license. *Kovach; Harkins v. Zamichieli*, 266 Pa. Superior Ct. 401, 405 A.2d 495 (1979); *Pennsylvania Game Commission*. The expenditure necessary to establish an irrevocable license could be money or labor. *Harkins; Pennsylvania Game Commission*.

---

litigant may not prepare as completely as he would had he realized that he was not going to receive a second chance to present his case.

*Soja* at 481, 522 A.2d at 1133.

The license agreement in question provided LARA with a yearly option to renew the license. Termination of the license could occur for breach of a convenant or condition of the license agreement by LARA; bankruptcy of LARA; attachment of LARA's goods and chattels located at the Park; entry of any injunction against LARA prohibiting races; or public demonstrations upon the Park's premises against racing. Otherwise, the agreement makes no provision for termination of the license, nor does it indicate that the license is to be perpetual in nature if the conditions for termination specified in the agreement do not occur.

However, we believe the following evidence of record establishes that the license was revocable. Jerry Fried, President of LARA, testified that LARA made no improvements to the property and was not responsible for maintenance and repairs to the race track. LARA's expenditures were limited to that of race promoter. Additionally, several witnesses for LARA testified that rumors circulated every year that the Park was going to discontinue racing. In fact, in June or July of 1986, Fried sought assurances from Park officials that racing would continue for the 1987 racing season; and upon receiving these assurances made an announcement over the loudspeaker advising his patrons of the news.

By determining that the license was revocable, the trial court clearly resolved that no injunction could ever issue and that damages were a sufficient remedy available to LARA. The trial court also directed that a hearing be held in order to determine LARA's damages. In view of the fact that the license was revocable and no injunction could issue, it was not error for the trial court to limit LARA's relief to damages. *See Topley v. Buck Ridge Farm Construction Co.,* 30 Pa. Commonwealth Ct. 360, 374 A.2d 976 (1977).

As to the issue raised by LARA regarding the trial court's exclusion of evidence regarding tortious interference with contractual relations and abuse of government power, we briefly note that the parties agreed that the issue at the preliminary injunction hearing was limited to LARA's rights under the license agreement. Thus, we do not believe that the trial court was in error, as the tortious interference and abuse of government power issues will be addressed at the hearing regarding LARA's complaint in equity against Appellees. As to the remaining issue raised by LARA—whether the trial court erred in failing to enforce the license agreement—based upon our disposition of the matter herein, we need not discuss this issue.

Accordingly, while the rule is that it is improper, absent stipulation from counsel, to consolidate proceedings for a preliminary and final injunction, the particular circumstances herein required that before it could be determined whether an injunction, preliminary or final, could ever issue, that it first be determined whether the license was revocable. By concluding the license was revocable, no injunction could be issued. Therefore, we will affirm.[6]

## ORDER

AND NOW, this 6th day of June, 1988, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is hereby affirmed.

Judge McGINLEY concurs in the result only.

---

[6] We also note that because the 1987 racing season has now passed, whether an injunction should have issued with respect to that racing season is now moot.