It means a little bit of extra effort on your part to bring him up-to-date.

As of this moment, then you have twelve jurors and you can go ahead and decide the case....

. I think this is the most sensible way to handle the situation. **I would like you to briefly tell new juror number eight when you get back to the jury room exactly what went on in your deliberations so far,** what the position of each person might be and then sit down and proceed as though you were just starting over.

*Id.* at 28–29 (emphasis added).

These instructions, in effect, ordered that Saunders be tried before a panel of thirteen. The trial court did not instruct the original jurors to disregard their prior deliberations which involved the views of juror number eight. In fact, the trial court ordered to the contrary. The court directed the original jurors to disclose to the replacement what had transpired during their prior deliberations. Thus, the court's instructions to the recomposed jury not only failed to insure the integrity of the jury function, but, quite antithetically, served to compromise this integrity. Consequently, the views and comments of juror number eight may very well have remained a part of this trial when the final verdict was rendered. Since the Commonwealth has failed to establish that the integrity of the jury function was maintained in the instant case, the resulting verdict cannot be accepted. *See generally Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746 (1949) (allowing alternate jurors to retire with principal jurors after submission of the case constitutes reversible error). In so holding, we echo the sentiments of the Court of Appeals for the 11th Circuit:

> The rule is "the rule" and [proper] substituted juror procedure ... is a narrowly limited exception to the rule, applicable only in extraordinary situations and, even then only when extraordinary precautions are taken ... to ensure that the defendants are not prejudiced.

*Kopituk,* 690 F.2d at 1311.

Finally, we note that in reaching our decision today, we do not speak to the constitu-tionality of post-submission substitution. Our decision only pertains to redressing a violation of Rule 1108(a) of our state's Rules of Criminal Procedure. Whether a violation of Rule 1108(a) also constitutes a violation of our state or federal constitutions is a question left for another day.

Judgment of sentence vacated and case remanded for a new trial. Jurisdiction relinquished.

## CITY OF CHESTER

v.

## CHESTER REDEVELOPMENT AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 11, 1996.

Decided Oct. 28, 1996.

Reargument Denied Jan. 6, 1997.

Robert J. Sugarman, for appellant.

Natalie M. Habert, for appellee.

Before McGINLEY and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

The Chester Redevelopment Authority (Authority) appeals from the decision of the Court of Common Pleas of Delaware County which declared dissolution of the Authority, ordered the First Fidelity Bank, N.A. (Fidelity) to transfer the Authority's assets held in its accounts to the City of Chester (City), and ordered the City to assume the Authority's other assets and debts.

 The issues raised on appeal are: (1) whether the City may establish the Authority's dissolution by presenting a copy of a resolution passed by the City Council to dissolve the Authority and a certificate reciting such resolution sent to appropriate state agencies, *without demonstrating the City Council's* compliance with the prerequisite for dissolving an urban redevelopment authority set forth in Section 4.1 of the Urban Redevelopment Law (Law) [1]; and (2) whether the trial court improperly decided the

---

**1.** Act of May 24, 1945, P.L. 991, *as amended,* added by Section 1 of the Act of November 16, 1967, P.L. 498, 35 P.S. § 1704.1.

merits of the action following a preliminary injunction hearing.[2]

On June 9, 1995, the City filed a complaint in equity against the Authority and Fidelity, setting forth following allegations. The City received funds through various federal and state entitlement programs, and they were held in the Fidelity's two separate accounts. Pursuant to the City Council's resolution and cooperation agreements between the City and the Authority, the Authority was permitted to hold those funds in trust for the City. The agreements permitting the Authority to administer the urban development action grants programs and the community development block grants programs expired on July 1, 1994 and April 14, 1995, respectively. Under the terms of the agreements, the Authority is required to transfer all funds and income to the City upon expiration of the agreements. Despite numerous demands, the Authority refused to turn over the funds to the City. In the complaint, the City sought an order declaring that the Authority should hold the funds as a trustee for the City, enjoining Fidelity from paying the funds to anyone other than the City, and directing the Authority to turn over the funds to the City.

A hearing on the City's petition for preliminary injunction was scheduled for June 16, 1995, but was continued after the trial judge was informed that the Authority intended to present documents signed by him as a for-

mer mayor of the City. On June 23, 1995, the trial judge recused himself from the case. In the meantime, the City Council by a 4–to–1 vote passed a resolution on June 22, 1995, declaring that the functions of the Authority ·could be more properly carried out by the county authority, and that there was no longer need for the Authority.

On June 28, 1995, a rescheduled hearing was held before a newly assigned trial judge. At that hearing, the City requested that the court "recognize" the Authority's dissolution and direct Fidelity to immediately transfer all assets held in the Authority's name. To support its request, the City presented a certified copy of the City Council's resolution to dissolve the Authority and a certificate reciting the adoption of such resolution. The assistant City solicitor also testified that the resolution was certified by the City clerk on June 27, 1995 at her direction and sent to the Department of State. The Authority's counsel objected to the City's attempt to establish the Authority's dissolution, stating that the Authority had not been released from its debts. The trial court refused to take evidence regarding the City's financial ability to satisfy the Authority's obligations and directed the City to amend the complaint to allege the Authority's dissolution.[3]

At the June 29, 1995 hearing, the City's counsel served a copy of the amended com-

---

**2.** The City argues that the Authority's appeal should be quashed because the Authority's brief failed to comply with the Pennsylvania Rules of Appellate Procedure. The City points out that the Authority improperly included argument in the statement of the case, failed to follow the required order and failed to set forth the form of the action and the procedural history of the case. An appeal may be quashed where substantially defective briefs impede meaningful appellate review. *Grosskopf v. Workmen's Compensation Appeal Board (Kuhns Market)*, 657 A.2d 124 (Pa. Cmwlth.1995), *appeal denied*, 542 Pa. 677, 668 A.2d 1139 (1995). After review of the Authority's brief, we conclude that the alleged noncompliance is not so substantial as to warrant quashing the appeal.

The City further argues that the following documents should be stricken from the reproduced record because they are not original papers or exhibits filed with the trial court: "the Caveat to Filing Certificate of Dissolution" filed by the Authority with the Department of State; the certificate issued by the Department indicating that no

certificate of dissolution was on file; the petition for writ of prohibition filed with the Supreme Court; and the petition for review filed with this Court. Because the petitions were presented at the hearing and are contained in the certified record, they are properly included in the reproduced record. However, the other documents are not part of the original record and therefore must be stricken from the reproduced record.

**3.** On June 28, 1995, the Authority filed a petition for review with this Court alleging, *inter alia*, that this Court has original jurisdiction over the matter involving the Authority because an urban redevelopment authority is a state agency for the purpose of jurisdiction. By order dated June 30, 1995, this Court transferred the matter to the trial court, concluding that this Court has neither original nor appellate jurisdiction. Subsequently, the Authority filed a petition for writ of prohibition with the Pennsylvania Supreme Court asserting that the trial court lacks authority to dissolve the Authority. The petition was denied by the Supreme Court.

plaint upon the Authority's counsel. The City alleged in the amended complaint that the City Council passed the resolution to dissolve the Authority and filed a certificate reciting the adoption of the resolution with the Department of State and the Department of Community Affairs, and that the Authority's assets therefore automatically passed to the City. After taking ten-minute recess to allow the Authority's counsel to review the amended complaint, the trial court entered an order declaring the Authority's dissolution, directing Fidelity to immediately transfer all assets of the Authority held in its accounts to the City and directing the City to assume all other assets and debts of the Authority. The trial court subsequently denied exceptions filed by the Authority on July 11, 1995 as untimely. The Authority's appeal to this Court followed.[4]

■ This Court's scope of review of a denial of a motion for post-trial reliefs is limited to determining whether the trial court abused its discretion or committed an error of law. *Pikur Enterprises, Inc. v. Department of Transportation,* 163 Pa.Cmwlth. 251, 641 A.2d 11 (1994), *appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994).

■ Section 4.1 of the Law sets forth the procedures for dissolving an urban redevelopment authority:[5]

*If a city authority has never issued any bonds, or incurred any other debts or contractual obligations, or has paid and has been released from and discharged of all debts and bonded, contractual and other obligations,* the governing body of the city may, . . . find and declare by proper resolution that its functions can be more properly carried out by a county authority and that there is no longer any need for the authority created for such city to function. In such case the governing body shall issue a certificate reciting the adoption of such resolution, and shall cause such certificate to be filed with the Department of State and two duplicates thereof with the Department of Community Affairs. Upon such filing the city authority shall cease to function, and title to any assets held by the authority at that time shall pass to the city. *A copy of the certificate described in this section shall be admissible in any suit, action or proceeding and shall be conclusive proof that the authority has ceased to be in existence.* (Emphasis added.)

The trial court concluded that under Section 4.1 of the Law, the City Council's resolution to dissolve the Authority and the certificate reciting the resolution sent to the Department of State and the Department of Community Affairs conclusively established dissolution of the Authority, that other issues are therefore irrelevant to a determination of whether the Authority was dissolved, and that the Authority's challenge to the City Council's action is tantamount to a collateral attack to the Authority's dissolution.

In so concluding, the trial court relied on cases under Section 3C of the Municipality Authorities Act of 1945,[6] which provides, in-

If the Secretary of the Commonwealth finds that the articles of incorporation conform to law, he shall . . . endorse his approval thereon, and when all proper fees and charges have been paid, shall file the articles and issue a certificate of incorporation to which shall be attached a copy of the approved articles. Upon the issuance of such certificate of incorporation by the Secretary of the Commonwealth, the corporate existence of said Authority shall begin. *Said certificate of incorporation shall be conclusive evidence of the fact that such Authority has been incorporated, but proceedings may be instituted by the Commonwealth to dissolve any Authority which shall have been formed without substantial compliance with the provisions of this section.* (Emphasis added.)

---

4. The City filed a motion to dismiss and quash appeals, asserting, *inter alia,* that the Authority waived its right to appeal the trial court's June 29, 1995 order due to its failure to timely file exceptions. By order dated February 29, 1996, this Court rejected the City's assertion in denying the motion in most part.

5. An urban redevelopment authority incorporated under the Law is considered a local agency for the purpose of determining a court's jurisdiction, and therefore, a court of common pleas has original jurisdiction over the disputes involving such authority. *Levine v. Redevelopment Authority of City of New Castle,* 17 Pa.Cmwlth. 382, 333 A.2d 190 (1975).

6. Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. § 303C. Section 3C of the Municipality Authorities Act provides in relevant part:

*ter alia,* that a certificate of incorporation of a municipal authority issued by the Secretary of the Commonwealth constitutes conclusive evidence of the authority's incorporation. The trial court reasoned that the cases under Section 3C of the Municipality Authorities Act are equally applicable to this matter because Section 4.1 of the Law contains the similar language that a copy of the certificate constitutes conclusive proof of ceasation of the authority's existence.

■ Under Section 3C of the Municipality Authorities Act, once a certificate of incorporation is issued by the Secretary, only the Commonwealth may seek to dissolve the municipal authority on the basis that it was not formed in substantial compliance with the Act; others are not permitted to collaterally attack the validity of the incorporation. *Deer Creek Drainage Basin Authority v. County Board of Elections of County of Allegheny,* 475 Pa. 491, 381 A.2d 103 (1977); *Upper Dublin Township Authority v, Piszek,* 420 Pa. 536, 218 A.2d 328 (1966); *Jonnet v. Municipality of Monroeville,* 31 Pa.Cmwlth. 437, 376 A.2d 1015 (1977).

However, unlike Section 3C of the Municipality Authorities Act, Section 4.1 of the Law further provides that the governing body may declare dissolution of the authority, only if the authority has paid and has been released from and discharged of all debts and obligations. Thus, the interpretation of Section 4.1 adopted by the trial court and urged by the City totally disregards the specific prerequisite for dissolving the urban redevelopment authority provided therein.

When Section 4.1 is considered in its entirety, it is clear that the legislature intended to protect creditors of an urban redevelopment authority by permitting the governing body to declare dissolution of the authority only after the authority's debts have been paid off. This conclusion is further supported by the language in Section 4.1 that upon filing of the certificate, "title to any assets" held by the authority pass to the city upon its dissolution. If the legislature intended to permit the authority to be dissolved despite its outstanding debts, it would have provided that the city must also assume

such "debts" upon filing of the certificate of dissolution.

Moreover, the Municipality Authorities Act relied on by the trial court also contains similar provisions prohibiting a withdrawal or a termination of a municipal authority when the authority has incurred debts. "[N]o municipality shall be permitted to withdraw from any [joint] Authority after any obligation has been incurred by the Authority." Section 3.1A of the Municipality Authorities Act, 53 P.S. § 304A. Under Section 3.1C of the Act, the Secretary of the Commonwealth is required to review an application to withdraw and issue a certificate of withdrawal based only upon a finding that the application conforms to the Act.

Unlike the Municipality Authorities Act, the Law does not provide for specific procedures for reviewing the governing body's compliance with the requirements of the Law. However, any interpretation of Section 4.1 of the Law allowing a governing body to conclusively establish an authority's dissolution by merely presenting a copy of the resolution and the certificate without demonstrating its compliance with the requirements of the Law would render the prerequisite for dissolving the authority set forth in Section 4.1 superfluous and meaningless. It is a fundamental principle of statutory construction that words in a statute should be given full effect and should not be treated as mere surplusage. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921; *Coon v. Civil Service Commission for Allegheny County Police & Firemen,* 654 A.2d 241 (Pa.Cmwlth.1995), *appeal dismissed,* 545 Pa. 63, 679 A.2d 1263 (1996). Further, under the trial court's interpretation, the governing body's actions would not be subject to judicial review in any proceeding. We do not find that the legislature intended such result.

Hence, we hold that under Section 4.1 of the Law, to establish dissolution of the urban redevelopment authority the city must demonstrate the governing body's compliance with the requirements of the Law for dissolving the authority, in addition to presenting evidence of the governing body's resolution and its filing of the certificate. The trial court therefore erred in concluding that the

Authority was prevented from challenging the City Council's action on the basis of its failure to comply with the requirements of the Law.

■ Further, the trial court erred in entering a final order on the merits of the City's action following the preliminary injunction hearing.

■ It is well established that separate and distinct standards govern a request for preliminary injunction and a request for permanent injunction: a preliminary injunction turns on the presence of imminent, irreparable harm, while a permanent injunction is warranted if no adequate remedy at law exists for a legal wrong. *LARA, Inc. v. Dorney Park Coaster Co.,* 116 Pa.Cmwlth. 548, 542 A.2d 220 (1988), *appeal denied,* 522 Pa. 580, 559 A.2d 40 (1989). Consequently, it is inappropriate for a court to treat a preliminary injunction hearing as a final injunction proceeding without providing a full hearing. *Soja v. Factoryville Sportsmen's Club,* 361 Pa. Superior Ct. 473, 522 A.2d 1129 (1987). "It is ... unfair to reach a final decision after a preliminary proceeding. A litigant may not prepare as completely as he would had he realized that he was not going to receive a second chance to present his case." *Id.* at 481, 522 A.2d at 1133.

In the matter *sub judice,* the trial court, despite the Authority's objection, treated the preliminary injunction hearing as a final hearing on the merits of the equity action and disposed of the entire case without providing the Authority with the adequate opportunity to defend itself on the allegations set forth in the amended complaints.

Accordingly, we vacate the trial court's order and remand this matter for a final hearing and a decision on the merits of the action.[7]

### ORDER

AND NOW, this 28th day of October, 1996, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is vacated. This matter is remanded

---

7. Since we vacate the trial court's order and remand for a further proceeding, we need not address the issue of whether the trial court erred

to the court for a final hearing and a decision on the merits of the instant action. The caveat to filing certificate of dissolution and the certificate of good standing of the Chester Redevelopment Authority are stricken from the reproduced record.

Jurisdiction relinquished.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that the trial court erred by ordering that the Chester Redevelopment Authority was dissolved.

As the majority notes, Section 4.1 of the of the Law provides in pertinent part:

If a city authority has never issued any bonds, or incurred any other debts or contractual obligation, or has paid and has been released from and discharged of all debts and bonded, contractual and other obligations, the governing body of the city may ... find and declare by proper resolution that its functions can be more properly carried out by a county authority and that there is no longer any need for the authority created for such city to function. In such case the governing body shall issue a certificate reciting the adoption of such resolution, and shall cause such certificate to be filed with the Department of State and two duplicates thereof with the Department of Community Affairs. Upon such filing the city authority shall cease to function, and title to any assets held by the authority at that time shall pass to the city. A copy of the certificate described in this section shall be admissible in any suit, action or proceeding and shall be conclusive proof that the authority has ceased to be in existence.

35 P.S. § 1704.1.

The record reveals that a time-stamped copy of the certificate was submitted into evidence and that the Authority did not object to the authenticity of the certificate. Pursuant to Section 4.1 this constitutes "conclusive proof that the authority has ceased to be in existence." However, the majority con-

---

in refusing to permit the Authority to cross-examine the assistant City solicitor on her bias against the Authority.

cludes that under Section 4.1, in addition to presenting evidence of the certificate, the City must demonstrate that the authority has paid and been released from all debts and obligations. The majority reasons that this conclusion is supported by the legislature's clear intention to protect creditors.

While I agree with the majority's interpretation of the legislature's intent I do not agree with the majority's conclusion that the trial court disregarded and thwarted the aims of the General Assembly. In its order dated June 29, 1995, the trial court directed that in addition to assuming all the assets of the Authority, the City must assume all its legally incurred debts and liabilities. Trial court order, June 29, 1995, Reproduced Record at 218a.

Accordingly, I would conclude that the prerequisites for dissolving the authority were satisfied and that the trial court did not err.

Reargument Denied Jan. 6, 1997.