# Citadel Broadcasting Co. v. Gratz

C.P. of Lackawanna County, no. 2001-EQ-60021.

*John J. Myers* and *Joseph G. Ferguson,* for plaintiff.
*J. Timothy Hinton,* for defendants.

NEALON, *J.,* May 1, 2001—Plaintiff, Citadel Broadcasting Company, which owns and operates 11 radio stations in northeastern Pennsylvania seeks a preliminary injunction barring its former account executive, defendant Florence Gratz, from continuing her employment with Citadel's local competitor, defendant Shamrock Communications Inc., pending a full hearing on the merits of Citadel's request for a permanent injunction. Since the noncompetition agreement at issue was not executed at the inception of Gratz's employment, nor was it supported by adequate consideration, Citadel is not entitled to temporarily restrict Gratz's vocational opportunities in the radio industry based upon the restrictive covenant. Moreover, inasmuch as Citadel has not established that Gratz has misappropriated Citadel's trade secrets or confidential information during her employment with Shamrock, Citadel's alternative request for injunctive relief predicated upon the nondisclosure agreement will likewise be denied.

## I. PROCEDURAL HISTORY

On April 10, 2001, Citadel filed an equity complaint against Gratz and Shamrock asserting that Gratz is in breach of a noncompetition agreement and further charging that Gratz and Shamrock have intentionally interfered with Citadel's contractual relations and prospective economic advantages. (See plaintiff's complaint, ¶¶24-39.) On April 1, 2001, Citadel filed a motion for a preliminary injunction pursuant to Pa.R.C.P. 1531 and secured a rule to show cause why Gratz should not be temporarily enjoined from working as a sales account executive with Shamrock. The rule was made returnable for a hearing on April 18, 2001, at which time testimony was received from Paul Ehlis, Florence Gratz and James Morris and various exhibits were introduced into evidence.

At the conclusion of the hearing, Citadel's request to file a supplemental brief on or before April 23, 2001, was granted with the proviso that Gratz and Shamrock would be allowed to submit their responsive brief by April 30, 2001. Upon the filing of the parties' memoranda of law, this matter was submitted for a decision. The factual findings set forth below are based upon the testimony and evidence which have been found to be competent, credible and probative.

## II. FINDINGS OF FACT

(1) Citadel owns and operates approximately 300 radio stations in more than 40 markets throughout the United States, including WMGS-FM, WEMR-FM, WXBE-FM, WXAR-FM, WBHT-FM, WBSX-FM,

WBHD-FM, WARM-AM, WAZL-AM, WJKN-AM, and WEMR-AM in the five-county region (Lackawanna, Luzerne, Columbia, Monroe and Wyoming) compromising the northeastern Pennsylvania market.

(2) Shamrock also owns and operates radio stations in the same northeastern Pennsylvania market and is a direct competitor of Citadel in that five-county region.

(3) On November 19, 1992, Gratz began employment as an account executive with WARM Broadcasting Company Inc. (a.k.a Susquehanna Pfaltzgraff Company, a radio division) which owned and operated WARM-AM, WMGS-FM and WBHT-FM radio stations in northeastern Pennsylvania. (See plaintiff's motion for preliminary injunction, ¶4; defendants' answer to plaintiff's motion for preliminary injunction, ¶4.)

(4) On June 24, 1996, Gratz executed an employment agreement with WARM Broadcasting Company Inc. which included a covenant not to compete by virtue of which Gratz "agree[d] for a period of six months from [her] date of termination not to work in the capacity of a salesperson, sales manager or in any position involving the sales of advertising time . . . for any radio station, TV station, cable system or other electronic media in the Wilkes-Barre/Scranton area . . . ." (See plaintiff's exhibit no. 8.)

(5) On November 14, 1996, WARM Broadcasting Company Inc. executed an "asset purchase agreement" with Tele-Media Broadcasting Company whereby Tele-Media agreed to purchase the assets of WARM. Contemporaneously with the execution of the "asset purchase agreement," Tele-Media and WARM entered into a local marketing agreement in which Tele-Media agreed to

operate WARM-AM, WBHT-FM, WKQV-AM, WKQV-FM, and WMGS-FM radio stations pending the approval of the WARM/Tele-Media sale by the Federal Communications Commission. (See plaintiff's exhibit no. 1; defendants' exhibit no. 2.)

(6) Tele-Media subsequently executed a "single station radio blanket license agreement" with Broadcast Music Inc., to operate WMGS-FM beginning December 1, 1996. (See defendants' exhibit no. 4.)

(7) Commencing December 1, 1996, the salaries and remuneration for former WARM sales personnel, including Jerry Paparelli, Carl Krupa and James E. Morris were paid by Tele-Media rather than WARM. After Mr. Paparelli, Mr. Krupa and Mr. Morris declined to execute a noncompetition agreement with Tele-Media on December 10, 1996, their employment with Tele-Media was terminated immediately. Mr. Paparelli, Mr. Krupa and Mr. Morris received W-2 wage statements from Tele-Media confirming that they had been paid wages and compensation by Tele-Media prior to December 10, 1996. (See defendants' exhibit nos. 7-9.)

(8) On December 9, 1996, Tele-Media presented Gratz with a compensation agreement reflecting her commission structure as an account executive with Tele-Media, and Gratz signed the compensation agreement on that date. The Tele-Media/Gratz compensation agreement executed by Gratz did not increase or improve her previous level of remuneration. (See defendants' exhibit no. 10.)

(9) On December 10, 1996, Gratz executed an "agreement respecting noncompetition and trade secrets" with Tele-Media with respect to the operations of radio sta-

tions WARM-AM, WMGS-FM, WBHT-FM, WKQV-AM, and WKQV-FM. The preamble to that agreement memorializes the fact that "[Gratz] is seeking *continued* employment with [Tele-Media]." (See plaintiff's exhibit no. 2, p. 1; defendants' exhibit no. 1, p. 1.) (emphasis added) Pursuant to the noncompetition clause of that agreement, Gratz agreed that upon her termination from employment with Tele-Media, "she will not thereafter for a period of six months render any services of a nature substantially similar to the services rendered by [Gratz] to [Tele-Media] over the facilities of any other radio station licensed to serve or operation [sic] within any community within the metropolitan survey area of [Tele-Media's] stations." Gratz further acknowledged that upon her termination from employment, "she will not at any time thereafter divulge or disclose to any person, partnership or corporation any trade secrets, including, but not limited to programming formulas or formatics, programming strategies or sales formulas and strategies or business affairs of [Tele-Media]." *(Id.)*

(10) At the time that Gratz signed the "agreement respecting noncompetition and trade secrets" on December 10, 1996, she did not receive any promotion, salary increase or other employee benefit from Tele-Media in exchange for her execution of the restrictive covenant.

(11) Effective March 28, 1997, Tele-Media formally merged with Citadel by virtue of Citadel's purchase of Tele-Media's issued and outstanding shares of capital stock. (See plaintiff's exhibit nos. 3-4; defendants' exhibit no. 3.)

(12) On July 9, 1997, a certificate of merger was filed with the office of the Secretary of State of the state of

Delaware memorializing the merger of Tele-Media and Citadel. (See plaintiff's exhibit no. 4.)

(13) On August 5, 1997, Gratz executed a "confidentiality agreement" with Citadel in which she agreed that following her termination of employment, she would not "disclose or otherwise make available confidential information to any person . . . , or use or appropriate such information to my own advantage or for the benefit of any person or entity other than Citadel." The "confidentiality agreement" defines the phrase "confidential information" as including any information or material which "(i) is not generally known to the public or within the media business community; (ii) was acquired or learned by [Gratz] as a result of and during [her] employment with Citadel; and (iii) relates to the business or affairs of Citadel." (See defendants' exhibit no. 6.)

(14) As a senior account executive with Citadel, Gratz was responsible for generating $660,000 in net advertising revenue each year, and in that capacity, she received the "Citadel stellar seller" award and the "salesperson of the month" award for eight months of the year. (See plaintiff's exhibit no. 7.)

(15) In 1999, Citadel provided Gratz with a noncompetition agreement for her signature, but she declined to execute it.

(16) In light of her dissatisfaction with her work environment and rate of compensation at Citadel, Gratz decided to leave the employ of Citadel. On March 22, 2001, she hand-delivered a letter of resignation to Citadel's general sales manager confirming that she was resigning her position as an account manager effective April 5, 2001. (See plaintiff's exhibit no. 5.)

(17) Upon its receipt of Gratz's letter of resignation on March 22, 2001, Citadel terminated Gratz's employment immediately. On March 24, 2001, counsel for Citadel forwarded a letter to Shamrock's general manager indicating that "Citadel has learned that Shamrock has offered Ms. Gratz employment within the Wilkes-Barre/ Scranton metropolitan survey area" and admonishing Shamrock not to "permit her to act in a sales or customer account representative capacity for the next six months" in light of the "agreement respecting competition and trade secrets" executed by Gratz on September 10, 1996. (See plaintiff's exhibit no. 6.)

(19) On March 26, 2001, Gratz commenced employment with Shamrock as an account executive.[1]

(20) During her employment with Shamrock, Gratz has solicited two accounts (Pocono Raceway and La-z-Boy Furniture) of the 40 clients that she serviced for Citadel, but has only persuaded one of those former clients, Pocono Raceway, to purchase advertising with Shamrock. Although Pocono Raceway has purchased advertising with Shamrock, it has not discontinued its advertising relationship with Citadel.

---

1. In their answer to the motion for preliminary injunction, Gratz and Shamrock originally averred that "Gratz is employed by the *Scranton Times L.P.,* rather than Shamrock Communications Inc." (See defendants' answer to plaintiff's motion for preliminary injunction, ¶¶11-12, 16.) Gratz and Shamrock further posited that since "Gratz is employed by the *Scranton Times L.P.,* defendant Gratz does not require Citadel's consent or permission to work for a competitor." (*Id.* ¶16.) However, at the time of the evidentiary hearing, Gratz and Shamrock stipulated that Gratz is, in fact, employed by Shamrock which is a competitor of Citadel.

(21) While employed with Citadel, Gratz gained access to qualitative and quantitative ratings information and demographic data which are generally available throughout the radio industry and are not proprietary information of Citadel. With regard to any knowledge that Gratz acquired concerning Citadel's advertising rates, Citadel has not proven that Gratz has utilized any such information while in Shamrock's employ.

(22) Citadel cannot identify any accounts that Gratz has misappropriated from Citadel to Shamrock (*i.e.,* clients which have left Citadel for Shamrock), nor can Citadel establish any reduction in advertising revenue that it has experienced as a result of Gratz's employment with Shamrock.

(23) Gratz is a single parent of three children and her sole source of income is her current employment with Shamrock.

## III. LEGAL DISCUSSION

### (A) *Standard of Review*

To secure injunctive relief, the movant must generally establish that: (1) an injunction is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; (2) greater injury will result from refusing the injunction than from granting it; (3) the injunction will restore the parties to the status quo as it existed immediately before the allegedly wrongful conduct; (4) the alleged wrong is manifest and the injunction is reasonably suited to abate it; and (5) the moving party's right to relief is clear. *Limerick Auto Body Inc. v.*

*Limerick Collision Center Inc.,* 769 A.2d 1175 (Pa. Super. 2001); *Troianiello v. Leggat,* 99 Lacka. Jur. 156, 168 (1998).

However, distinct burdens of proof govern requests for preliminary injunctions as opposed to applications for permanent injunctions. *Chester v. Chester Redevelopment Auth.,* 686 A.2d 30, 35 (Pa. Commw. 1996), *app. denied,* 548 Pa. 650, 695 A.2d 787 (1997); *Dorton v. Sperling,* 101 Lacka. Jur. 246, 249 (1999). Since a preliminary injunction merely serves as a temporary remedy pending a full hearing on the merits, *In re Appeal of Little Britian,* 651 A.2d 606, 611 (Pa. Commw. 1994), *app. denied,* 541 Pa. 645, 663 A.2d 696 (1995), the criteria for the issuance of a preliminary injunction are less demanding than that applicable to requests for a permanent injunction. *LARA Inc. v. Dorney Park Coaster Co. Inc.,* 116 Pa. Commw. 548, 553, 542 A.2d 220, 223 (1998), *app. denied,* 522 Pa. 580, 559 A.2d 40 (1989); *Com. v. Sea-Sea's Inc.,* 101 Lacka. Jur. 353, 363 (2000); *Troianiello,* 99 Lacka. Jur. at 168-69. For example, a party seeking a preliminary injunction is not necessarily required to establish the absence of an adequate remedy at law. *Chester,* 686 A.2d at 35; *Dorton,* 101 Lacka. Jur. at 250. Furthermore, "unlike a party seeking a permanent injunction, a party 'seeking a preliminary injunction is not required to establish his or her claim absolutely.' " *Boyle v. PIAA,* 676 A.2d 695, 699 (Pa. Commw. 1996), *app. denied,* 546 Pa. 684, 686 A.2d 1313 (1996); *Sea-Sea's, supra.* Rather, in demonstrating that the "right to relief is clear," a party requesting a preliminary injunction need only establish a reasonable likelihood of success on the merits. *Sheridan Broadcasting Networks Inc.*

*v. NBN Broadcasting Inc.,* 693 A.2d 989, 992 (Pa. Super. 1997); *Troianiello, supra.*

Consequently, in order to obtain a preliminary injunction, the movant must demonstrate that: (1) the right to relief is clear, but not necessarily absolute; (2) the need for relief is immediate; and (3) the harm will be irreparable if the injunction is not granted. *Golden Triangle News Inc. v. Corbett,* 689 A.2d 974, 978 (Pa. Commw. 1997); *Dorton, supra.* Notwithstanding the lesser standard of proof, a preliminary injunction remains "an extraordinary remedy to be utilized only where the plaintiff has established a clear right to relief." *Limerick Auto Body Inc., supra* at 1179; *A.M. Skier Agency Inc. v. Gold,* 747 A.2d 936, 942 (Pa. Super. 2000).

### (B) *Covenant Not To Compete*

Citadel contends that the noncompetition agreement which Gratz executed with Tele-Media on December 9, 1996, bars her from working as an accountant executive or salesperson with Shamrock.[2] Restrictive covenants are enforceable under Pennsylvania law if they are: (1) ancillary or incident to the acceptance of employment; (2) supported by adequate consideration; (3) reasonably limited in temporal and geographic scope; and (4) judiciously

---

2. The parties agree that the covenant not to compete which Gratz signed for WARM on June 24, 1996, is not applicable to Citadel's request for injunctive relief since Tele-Media simply purchased the assets of WARM without securing a specific assignment of the Gratz restrictive covenant. See *All-Pak Inc v. Johnston,* 694 A.2d 347, 351-52 (Pa. Super. 1997) (covenants contained in employment contracts are not assignable absent an explicit assignability provision or the consent of the employee to have the restrictive covenant remain in effect).

designed to safeguard a legitimate interest of the former employer. *Thermo-Guard Inc. v. Cochran,* 408 Pa. Super. 54, 64-66, 596 A.2d 188, 193-94 (1991); *Pilot Air Freight Corp. v. Sandair Inc.,* 118 F. Supp.2d 557, 563 (E.D. Pa. 2000). Covenants not to compete are generally disfavored by Pennsylvania courts, *Hayes v. Altman,* 438 Pa. 451, 454, 266 A.2d 269, 271 (1970); *National Business Services Inc. v. Wright,* 2 F. Supp.2d 701, 707 (E.D. Pa. 1998), and are strictly construed against the party seeking to enforce them. *Hess v. Gebhard & Co. Inc.,* 769 A.2d 1186, 1192 (Pa. Super. 2001); *Lackawanna Medical Group v. Feldman,* 100 Lacka. Jur. 65, 69 (1998), *app. dismissed,* no. 383 MDA 99 (Pa. Super. 1999). Post-employment restrictive covenants are subject to a more stringent test of reasonableness than noncompetition clauses which are ancillary to the sale of a business. *Scobell Inc. v. Schade,* 455 Pa. Super. 414, 420, 688 A.2d 715, 718 (1997); *Graphic Management Assoc. Inc. v. Hatt,* 1998 WL 159035, *13 (E.D. Pa. 1998). Thus, "in determining whether to enforce a post-employment restrictive covenant, we must balance the interest the employer seeks to protect against the important interest of the employee in being able to earn a living in his[/her] chosen profession." *Hess, supra; Advanced Fox Antenna Inc. v. Csaszar,* 1999 WL 54567, *2 (E.D. Pa. 1999) (quoting *Thermo-Guard Inc., supra*).

Gratz and Shamrock maintain that the noncompetition agreement which Gratz executed on December 10, 1996, is unenforceable since it was signed after she began employment with Tele-Media on December 1, 1996, and was not supported by new or additional consideration. As we have previously observed:

"To be valid, the noncompetition clause must be consummated contemporaneously with the exchange of consideration. *Capital Bakers Inc. v. Townsend,* 426 Pa. 188, 190-91, 231 A.2d 292, 293-94 (1967); *Records Center Inc. v. Comprehensive Management Inc.,* 363 Pa. Super. 79, 85, 525 A.2d 433, 435 (1987). If a covenant not-to-compete is executed at the inception of the employment, the consideration supporting the restrictive covenant is the job itself. See *e.g., Barb-Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 225-26, 206 A.2d 59, 61 (1965). However, when the noncompetition clause is injected into an existing employment relationship, it is enforceable only if the employee received some corresponding benefit or change in status. For example, if a restrictive covenant entered into after the start of employment is coupled with a promotion, *Records Center Inc., supra* at 85, 525 A.2d at 435-36, 'a cash payment, a guarantee of certain job benefits, including a favorable change in the employer's automobile reimbursement policy and a guaranteed severance benefit in the event of termination,' *Davis & Warde Inc. v. Tripodi,* 420 Pa. Super. 450, 456, 616 A.2d 1384, 1388 (1992), a transformation in employment classification from 'a trainee on a strictly provisional basis' to a full-time employee with greater earnings, *Modern Laundry & Dry Cleaning Co. v. Farrer,* 370 Pa. Super. 288, 293-94, 536 A.2d 409, 411-12 (1988), a stock purchase agreement, *Wainwright's Travel Service Inc. v. Schmolk,* 347 Pa. Super. 199, 203, 500 A.2d 476, 478 (1985), or increased commissions and long-term disability benefits, *Gordon Wahls Co. v. Linde,* 306 Pa. Super. 64, 67, 452 A.2d 4, 6 (1982), adequate consideration exists. In the absence of such new or addi-

tional consideration, the covenant not-to-compete is unenforceable. *Maintenance Specialties Inc. v. Gottus,* 455 Pa. 327, 330, 314 A.2d 279, 281 (1974); *Insulation Corp. of America v. Brobston,* 46 Pa. Super. 520, 529, 667 A.2d 729, 733 (1995)." *Dorton,* 101 Lacka. Jur. at 251.

Moreover, the mere continuation of the employment relationship at the time a noncompetition agreement is signed is "not sufficient consideration for the covenant despite the fact that the employment relationship was terminable at the will of either party." *George W. Kistler Inc. v. O'Brien,* 464 Pa. 475, 485, 347 A.2d 311, 316 (1975).

The competent evidence introduced during the injunctive hearing reflected that Tele-Media became the employer of Gratz by no later than December 1, 1996. As of that date, former WARM employees were paid their salaries and commissions by Tele-Media and the licensing agreements consummated by Tele-Media vis-à-vis the WARM stations identify Tele-Media as the radio broadcast licensee effective December 1, 1996. In fact, the noncompetition agreement itself refers to Gratz's "continued employment" with Tele-Media as of December 10, 1996.

Hence, the restrictive covenant which Gratz signed on December 10, 1996, is unenforceable unless it was supported by some additional consideration. Based upon the testimonial and documentary evidence produced to date, it is undisputed that Gratz did not receive any promotion, wage increase or other employee benefit in return for her execution of the covenant not to compete. Absent such consideration, the noncompetition clause dated December 10, 1996, cannot serve as a basis for enjoin-

ing Gratz from sales employment with Shamrock, and as such, Citadel has not demonstrated that its right to relief is clear.[3]

### (C) *Disclosure of Confidential Information*

In the alternative, Citadel seeks to enjoin Gratz from utilizing any trade secrets, customer lists or confidential information which she acquired during her employment with Citadel and its predecessor, Tele-Media. (See plaintiff's motion for preliminary injunction, ¶¶6, 8-9, 17, 25 (ii).) Trade secrets of an employer, customer good will and specialized training and skills are all legitimate interests protectable through a general restrictive covenant. *Thermo-Guard Inc., supra; Vector Security Inc. v. Stewart,* 88 F. Supp.2d 395, 400 (E.D. Pa. 2000). How-

---

3. In light of the denial of Citadel's request for a preliminary injunction based upon the covenant not to compete, we need not decide whether the Tele-Media restrictive covenant may be enforced by Citadel. In *All-Pak Inc.,* the Superior Court discussed the assignability of such a covenant in the context of an asset purchase. Relying upon the more recent ruling in *Hess, supra,* Citadel has attempted to distinguish the holding in *All-Pak Inc.,* and its application to the case sub judice. See *Hess, supra* at ¶¶13-16 (recognizing the validity of a restrictive covenant which had been assigned by the former employer who had a continuing interest via the subsequent employer in enforcing the covenant). More recently, a federal district court allowed a corporation which acquired all of the stock of a predecessor company to enforce a restrictive covenant executed by an employee of the original entity based upon the rationale that the employee "should not be deemed to work for a new employer simply because the name of the corporation changed and the corporation's shares have changed hands." *Siemens Medical Solutions Health Services Corp. v. Carmelengo,* 2001 WL 389335, *4 (E.D. Pa. April 12, 2001).

ever, even in the absence of a restrictive covenant, a former employer can enjoin the competitive use of confidential information obtained as a result of the trust and confidence of previous employment. See *Carl A. Colteryahn Dairy Inc. v. Schneider Dairy,* 415 Pa. 276, 280, 203 A.2d 469, 471 (1964); *West Mountain Poultry Co. v. Gress,* 309 Pa. Super. 361, 366, 455 A.2d 651, 653 (1982); *Hyman Companies Inc. v. Brozost,* 119 F. Supp.2d 499, 504 (E.D. Pa. 2000). "[W]ith or without a covenant addressing the subject of proprietary information, an employer is entitled to protection of its confidential information to the extent that the information is of such character as to be protectable under the common law of unfair competition or agency." *Bell Fuel Corp. v. Cattolico,* 375 Pa. Super. 238, 254-55, 544 A.2d 450, 458 (1988), *app. denied,* 520 Pa. 612, 554 A.2d 505 (1989). In that regard, the right of a businessperson to be protected against unfair competition stemming from usurpation of his or her trade secrets must be balanced against the right of an individual to the unhampered pursuit of the occupation and livelihood for which [s]he is best suited. *Renee Beauty Salons Inc. v. Blose-Venable,* 438 Pa. Super. 601, 604, 652 A.2d 1345, 1347 (1995); *Fidelity Fund Inc. v. Di Santo,* 347 Pa. Super. 112, 120, 500 A.2d 431, 436 (1985).

To be entitled to an injunction against the use or disclosure of information, a plaintiff must establish, inter alia, that the information at issue constitutes a trade secret acquired by the defendant while employed in a position of trust and confidence such that it would be ineq-

uitable and unjust for the employee to make use of the information to the prejudice of the former employer. *SI Handling Systems Inc. v. Heisley,* 753 F.2d 1244, 1255 (3d Cir. 1985); *Hyman Companies Inc., supra.* The employer bears the burden of proving the existence of a trade secret and, among the factors which a court may consider in determining whether information qualifies as confidential, include the extent to which the information is known outside the employer's business. *Christopher M's Hand Poured Fudge Inc. v. Hennon,* 699 A.2d 1272, 1275 (Pa. Super. 1997), *app. denied,* 553 Pa. 686, 717 A.2d 1026 (1998). Stated otherwise, the information "must be the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged." *Renee Beauty Salons Inc., supra* at 607-608, 652 A.2d at 1348-49 (quoting *Macbeth-Evans Glass Co. v. Schnelbach,* 239 Pa. 76, 85, 86 A. 688, 691 (1913)). Although a nondisclosure covenant does not create a right to protection of customer information, the presence of such a restriction is evidence of the confidential nature of the data involved. *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 625 n.5, 136 A.2d 838, 834 n.5 (1957); *Bell Fuel Corp., supra* at 259-60, 544 A.2d at 461.

During the course of her employment with Citadel, Gratz executed a confidentiality agreement in which she acknowledged that she would not appropriate any proprietary information regarding Citadel's marketing and programming plans and strategies which were not generally known within the media industry. (See defendants' exhibit no. 6.) However, Citadel concedes that the quali-

tative and quantitative ratings information employed by sales personnel is generally known or available throughout the radio broadcasting business such that it would not constitute a trade secret. The names of Citadel's advertising customers which Gratz has retained via her memory are likewise not considered confidential or proprietary information under Pennsylvania law. See *Carl A. Colteryahn Dairy Inc., supra* at 280-82, 203 A.2d at 471-72 (salesman could not be enjoined from soliciting customers whose names he had retained in his mental processes); *Renee Beauty Salons Inc., supra* at 609-10, 652 A.2d at 1349-50 (lower court erred by enjoining former salon employees from contacting salon customers since the names and styling preferences of those former customers could not constitute protected information). Furthermore, with regard to pricing information and advertising rates, Citadel has not established that Gratz is utilizing any such data in attempting to attract advertising accounts to Shamrock. Citadel's lack of proof in that respect is significant since "an individual may solicit a former employer's customers and divert business from a former employer, so long as no confidential information is used." *Multitherm Corp. v. Fuhr,* 1991 WL 146233, *20 (E.D. Pa. 1991) (citing *Spring Steels Inc. v. Molloy,* 400 Pa. 354, 359, 162 A.2d 370, 372-73 (1960)).

For a preliminary injunction to issue, Citadel must demonstrate that its right to relief is clear. The competent evidence introduced during the rule returnable hearing did not remotely establish that Gratz has been misappropriating classified information during her employment with Shamrock. Accordingly, Citadel has not

satisfied its burden of proof and its request to enjoin Gratz from continuing her employment with Shamrock will be denied.[4]

## DECREE NISI

And now, May 1, 2001, upon consideration of the motion for preliminary injunction filed by plaintiff, Citadel Broadcasting Company, and the testimony, evidence and legal authority submitted by the parties, and based upon the reasoning set forth in the foregoing adjudication, it is hereby ordered and decreed that the motion of plaintiff, Citadel Broadcasting Company, for a preliminary injunction is denied.

---

4. As a result of Citadel's failure to establish that its right to relief is clear, "there is no need for this court to consider the issue of irreparable harm." *Fedorko Properties Inc. v. C.F. Zurn & Associates,* 720 A.2d 147, 150 (Pa. Super. 1998). Nevertheless, it should be noted that Citadel has not produced any proof that it has lost any advertising accounts or revenue as a result of Gratz's employment with Shamrock.