IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,    :
Department of Corrections    :
    :
    v.    :    No. 1119 C.D. 2020
    :    Submitted: April 23, 2021
Lamar Alston,    :
    Appellant    :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT[1]    FILED: February 15, 2022


Lamar Alston appeals an order of the Court of Common Pleas of Centre County (trial court), dated September 29, 2020, granting the Department of Corrections (Department) an indefinite injunction to allow its medical staff to conduct involuntary physical examinations of Alston and administer medical treatment when deemed necessary to preserve Alston's health and life. The effect of the order was to indefinitely continue an *ex parte* preliminary injunction granted by the trial court on September 25, 2020. We vacate the trial court's order and remand for further proceedings.

Alston is incarcerated at the State Correctional Institution at Benner Township (SCI-Benner Township). On September 25, 2020, the Department filed a complaint, a petition for a preliminary injunction, and an application for an *ex parte*

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

preliminary injunction to authorize its medical staff to examine Alston, and to administer medical treatment, including nutrition, hydration and medication, whenever necessary to preserve Alston's health and life. The complaint alleged that Alston had previously engaged in several hunger strikes and, after September 12, 2020, began a new hunger strike. Alston missed 39 meals and was treated for dehydration at the Mount Nittany Medical Center. Original Record (O.R.), Item 1, Complaint ¶¶6, 9. Alston refused to "take his medication" or allow "any type of medical evaluation or assessment to be performed." O.R., Item 1, Complaint ¶¶5, 8. The complaint included an affidavit signed by Dr. Kevin Kollman, treating physician at SCI-Benner Township, which provided that to "a reasonable degree of medical certainty[, Alston] will be in imminent danger of the loss of life or other irreparable harm unless he takes nourishment." O.R., Item 1, Affidavit ¶12.

The trial court immediately granted the Department's application for an *ex parte* preliminary injunction and scheduled a hearing for September 29, 2020. O.R., Item 4. At the beginning of the September 29, 2020, hearing, the Department, through its counsel, advised the trial court that it was seeking "a *preliminary injunction* to preserve the health and life of [Alston.]" Notes of Testimony, 9/29/2020, at 3 (N.T. __) (emphasis added).

In support of its request for a preliminary injunction, the Department presented testimony from three witnesses. First, Dr. Kollman testified that Alston had been on a hunger strike for 19 days. He was drinking water but not eating. He missed 42 out of 52 meals and lost approximately 20 pounds. He refused to take his anti-seizure medication regularly. During this and previous hunger strikes, Alston was treated for dehydration, which adversely affected his skin, lips, tongue, blood pressure, and heart. Dr. Kollman testified that Alston had "chronic cumulative

2

signs" of starvation and was in imminent physical danger if he continued his hunger strike. N.T. 15, 23. Dr. Kollman testified that he and the medical staff would administer tube feedings to Alston, when necessary, should the court grant the injunction.

The Department also presented the testimony of Jeffrey Boland, the Corrections Health Care Administrator. He oversees the prison's medical department and the two contract companies that provide psychiatric and medical services to inmates. Boland did not have "an accurate answer" for Alston's reason for the hunger strike. N.T. 27. He testified that Alston mentioned "wanting a tablet" in his cell and suggested that he could be "striking against a disciplinary action." *Id.*

Bradley Booher, the Department's Deputy Superintendent for Centralized Services, testified that Alston had been housed in the restrictive housing unit. Due to his hunger strike, the Department admitted Alston to a psychiatric observation cell in the infirmary for medical monitoring. Booher testified that hunger strike monitoring increases the responsibilities of medical and security staff, who must work additional hours, prepare paperwork, attend hearings and administer tube feedings. The Department bears the cost of these measures. Booher opined that the death of a hunger striker would cause other inmates to "lose confidence in the facility as a whole," particularly the medical department. N.T. 37.

Alston testified on his own behalf. He claimed that his hunger strike was a response to targeted antagonistic treatment by prison staff, such as placing Alston in the restrictive housing unit for an extended period of time. He attempted to commit suicide because he was denied showers, phone calls, and the ability to write to his family. Alston testified that he is currently housed "as a person [who is] suicidal when the psych[iatric] department has not deemed [him] suicidal[.]" N.T.

3

42. The prison staff told Alston that "things were going to change [for the better]," but things did not change, which prompted his current hunger strike. N.T. 41. Alston testified that he ate dinner the day before the hearing, and he has been "monitoring things so that [he] will not be harmed." N.T. 43. Alston testified that a hunger strike has been the only effective way to present his problems to the prison staff.

By order of September 29, 2020, the trial court granted the Department an indefinite injunction permitting it to examine and perform invasive diagnostic tests on Alston, including blood and urine testing, and to administer medical treatment, including nutrition, hydration, and medication, whenever the medical staff determines that such treatment is necessary to preserve Alston's health and life. The trial court stated that the order "shall remain in effect as long as [Alston] is committed to the custody of the [Department]." Trial Court Order, 9/29/2020.

Alston appealed to this Court. In its opinion issued pursuant to Rule of Appellate Procedure 1925(a), the trial court explained that the Department established "a clear right to relief in the nature of a permanent injunction" because, in part, Alston "would not hesitate to use hunger strikes in the future to address his concerns with the corrections officers[.]" Trial Court 1925(a) Op., 1/20/2021, at 5.

On appeal,[2] Alston raises one issue for our review: whether the trial court exceeded its authority in granting the Department an indefinite injunction because the September 29, 2020, hearing was conducted solely on the Department's request for a preliminary injunction. The Department does not respond to Alston's

---

[2] In reviewing a trial court's grant or denial of a permanent injunction, this Court determines whether the trial court committed an error of law. *Buffalo Township v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002). Our standard of review for a question of law is *de novo*, and our scope of review is plenary. *Id*. at 664 n.4.

4

argument. Instead, it contends that it satisfied the burden for permanent injunctive relief.

We begin with a review of Pennsylvania Rule of Civil Procedure 1531, which provides, in pertinent part, as follows:

> (a)  *A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice.*  In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.
>
> * * *
>
> (d)  An injunction granted without notice to the defendant shall be deemed dissolved unless a hearing on the continuance of the injunction is held within five days after the granting of the injunction or within such other time as the parties may agree or as the court upon cause shown shall direct.
>
> (e)  *After a preliminary hearing, the court shall make an order dissolving, continuing or modifying the injunction.*

PA.R.CIV.P. 1531(a), (d), (e) (emphasis added).  In short, a hearing after the grant of an *ex parte* preliminary injunction is solely for the purpose of enabling the court to dissolve, continue or modify the preliminary injunction.  *Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown School District*, 463 A.2d 1198 (Pa. Cmwlth. 1983); *see also Petro v. Kennedy Township Board of Commissioners*, 411 A.2d 849, 851 (Pa. Cmwlth. 1980) (purpose of hearing after grant of *ex parte* preliminary injunction is to allow court to dissolve, continue or

5

modify the preliminary injunction). In other words, an order granting a permanent injunction is not authorized by Rule 1531.

In *Pennsylvania Interscholastic Athletic Association*, 463 A.2d 1198, the association ruled that a student who transferred to a new school district was ineligible to participate in interscholastic athletic contests because the transfer was athletically motivated. The school district filed a request for a "preliminary injunction [] without a hearing." *Id.* at 1199. The trial court granted the request. At the hearing that followed the grant of the *ex parte* injunction, the school district moved for a permanent injunction. After receiving testimony, the trial court ruled in favor of the school district, holding that "the preliminary injunction now in effect by order of this court be and hereby is made permanent[.]" *Id.*

The association appealed to this Court. In reversing the trial court, we held that the trial court's order granting the permanent injunction "was not authorized by [Pa.R.Civ.P.] 1531(e) and that the effect of that order was to continue the *preliminary* injunction granted without a hearing[.]" *Pennsylvania Interscholastic Athletic Association*, 463 A.2d at 1200 (emphasis in original). On the merits of the preliminary injunction, we held that because there was no property right to participate in interscholastic athletics, the association did not violate the student athlete's constitutional rights. In other words, neither the school district nor the student athlete could show the immediate and irreparable harm necessary for a preliminary injunction. *Id.* at 1202.

A court may not treat a hearing for a preliminary injunction as a final hearing on the merits of a permanent injunction unless the parties stipulate to that effect. *City of Chester v. Chester Redevelopment Authority*, 686 A.2d 30, 35 (Pa. Cmwlth. 1996) (citing *Soja v. Factoryville Sportsmen's Club*, 522 A.2d 1129 (Pa.

6

Super. 1987)). This is because "[i]t is . . . unfair to reach a final decision after a preliminary proceeding. A litigant may not prepare as completely as he would have had he realized that he was not going to receive a second chance to present his case." *City of Chester*, 686 A.2d at 35 (citing *Soja*, 522 A.2d at 1133). Further, the standards for a preliminary injunction and a permanent injunction differ. A preliminary injunction requires imminent, irreparable harm, while a permanent injunction is founded on the lack of an adequate remedy. *City of Chester*, 686 A.2d at 35.

In *Lindeman v. Borough of Meyersdale*, 131 A.3d 145 (Pa. Cmwlth. 2015), taxpayers sought a preliminary injunction to enjoin the borough from contracting with a new waste disposal company. In granting the preliminary injunction, the trial court directed the borough to terminate the new contract and to accept the bid of the former waste disposal contractor. On appeal, this Court held that the trial court erred in treating a hearing for a preliminary injunction as a final hearing on the merits and effectively granting a permanent injunction. For that and other reasons, this Court vacated the trial court's order and remanded the matter to the trial court for further findings consistent with the opinion.

Here, the trial court granted the Department's application for an *ex parte* preliminary injunction on September 25, 2020, and directed that a preliminary injunction hearing be held on September 29, 2020. The parties understood that the purpose of this hearing was to determine whether the *ex parte* preliminary injunction should be continued. PA.R.CIV.P. 1531(d). The Department's counsel confirmed on the record that the Department was requesting "a preliminary injunction." N.T. 3. As such, the trial court could only dissolve, continue, or modify the *ex parte* preliminary injunction previously entered under Rule 1531(e). *Pennsylvania*

7

*Interscholastic Athletic Association*, 463 A.2d at 1200. By contrast, in *Department of Corrections v. Fattah* (Pa. Cmwlth., No. 1468 C.D. 2011, filed April 9, 2012) (unreported), this Court affirmed the grant of an indefinite injunction where a permanent injunction hearing was conducted. Here, conversely, there has not been a hearing on a permanent injunction.[3] Thus, the trial court erred by granting the Department a permanent injunction.

Accordingly, we vacate the trial court's September 29, 2020, order, and remand for disposition of the Department's petition for a preliminary injunction under the appropriate legal standard, as outlined *supra*.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[3] Nowhere in its complaint or other pleadings did the Department request a permanent injunction.

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Corrections :
 :
 :
 v. : No. 1119 C.D. 2020
 :
Lamar Alston, :
 Appellant :

# **O R D E R**

AND NOW, this 15th day of February, 2022, the order of the Court of Common Pleas of Centre County dated September 29, 2020, in the above-captioned matter is VACATED, and the matter is REMANDED for disposition of the Department of Corrections' petition for preliminary injunction in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita